STATE of Wisconsin, Plaintiff-Respondent,

v.

Lavelle CHAMBERS, Defendant-Appellant.†

Court of Appeals

*No. 92–1111–CR. Submitted on briefs October 5, 1993.—Decided March 29, 1994.*

(Also reported in 515 N.W.2d 531.)

†Petition to review denied.

317

For the defendant-appellant the cause was submitted on the briefs of *La Velle Chambers, pro se*.

For the plaintiff-respondent the cause was submitted on the briefs of *James E. Doyle*, Attorney General by *James M. Freimuth*, Assistant Attorney General, of Madison.

Before Wedemeyer, P.J., Sullivan and Schudson, JJ.

WEDEMEYER, P.J. Lavelle Chambers, *pro se*, appeals from a judgment of conviction finding him guilty of felony murder, party to a crime, contrary to §§ 940.03 and 939.05, STATS., and possession of a firearm by a felon, contrary to § 941.29(2), STATS. Chambers asserts that "there is insufficient evidence to support conviction for felony murder, party to a crime, as an aider and abettor."[1] Because there is sufficient evidence to sustain the conviction, we affirm.

## I. BACKGROUND

The essential facts in this case are not in dispute. On November 18, 1990, Lavelle Chambers and his friend, Eddie Brooks, set out in Brooks' car with the intention of committing robbery. As they were driving

---

[1] Chambers raises no allegation of error in regard to that part of the judgment finding him guilty of possession of a firearm by a felon.

near North Avenue and 25th Street in Milwaukee, they noticed two men coming out of the North Avenue Smoke Shop. The two men appeared to be pushing a safe. Brooks stopped the car, both he and Chambers jumped out, and they accosted the individuals pushing the safe. The men told Brooks and Chambers that they had just broken into the smoke shop and had stolen the safe that they were pushing. They further indicated that the shop was now open and could be robbed of other items.

Seizing the opportunity, Brooks and Chambers ran into the smoke shop and stole various items — guns, money, and food stamps. As the pair was perusing the shop for other items to steal, a police scanner in Brooks' possession indicated that the police were being dispatched to the smoke shop location. Brooks stated "Lets [sic] go!"

As the pair was leaving the shop, they noticed a dark blue squad car located a short distance away on North Avenue. The squad apparently spotted the pair, made a U-turn, and drove towards the smoke shop. At this point, the two men ran west on North Avenue in an attempt to flee the scene. After approximately 100 yards, the pair split up and proceeded in different directions. Chambers ran under a porch where he was eventually found and arrested by the police.

While Chambers was hiding under the porch, Brooks engaged the pursuing police officer in gun fire. A bullet shot by Brooks struck and killed Sergeant Michael Tourmo.

Chambers was subsequently charged with felony murder, party to a crime, and possession of a firearm by a felon. Following a jury trial, Chambers was found guilty as charged. Chambers now appeals.

## II. DISCUSSION

Chambers asserts that there is insufficient evidence to support the conviction for felony murder, party to a crime, as an aider and abettor in the armed burglary of the smoke shop. Chambers bases this assertion on the fact that after he and Brooks had departed from the smoke shop, they went in separate directions and had no further contact or communication. Thus, Chambers argues, there is simply no evidence to link him to the murder of Sergeant Tourmo. While we recognize that an individual in Chambers' position might "believe" that he is innocent of felony murder, nonetheless, we conclude that the conduct undertaken by Chambers, as an accomplice to an armed burglary, falls within the ambit of the felony murder statute. Further, we conclude that the evidence is sufficient to uphold the felony murder conviction.

### A. *Applicable Law*

Section 940.03, STATS., the felony murder statute, provides:

> **Felony murder.** Whoever causes the death of another human being while committing or attempting to commit a crime specified in s. 940.225(1) or (2)(a), 943.02, 943.10(2) or 943.32(2) may be imprisoned for not more than 20 years in excess of the maximum period of imprisonment provided by law for that crime or attempt.[2]

---

[2] As relevant here, the underlying charge for which the felony murder count arose was armed burglary — § 943.10(2), STATS. That section, in concert with § 943.10(1), STATS., provides that "whoever intentionally enters [any building] without the consent of the person in lawful possession and with intent to steal or commit a felony in such place . . . 'while armed with a

Section 939.05, STATS., the party to a crime statute, reads:

**Parties to crime. (1)** Whoever is concerned in the commission of a crime is a principal and may be charged with and convicted of the commission of the crime although he did not directly commit it and although the person who directly committed it has not been convicted or has been convicted of some other degree of the crime based on the same act.

**(2)** A person is concerned in the commission of the crime if he:

(a) Directly commits the crime; or

(b) Intentionally aids or abets the commission of it; or

(c) Is a party to a conspiracy with another to commit it or advises, hires, counsels or otherwise procures another to commit it. Such a party is also concerned in the commission of any other crime which is committed in pursuance of the intended crime and which under the circumstances is a natural and probable consequence of the intended crime. This paragraph does not apply to a person who voluntarily changes his mind and no longer desires that the crime be committed and notifies the other parties concerned of his withdrawal within a reasonable time before commission of the crime so as to allow the others also to withdraw.

■

As to our review in a sufficiency of the evidence claim, the supreme court has stated:

---

dangerous weapon' " is guilty of a Class B felony. *See* §§ 943.10 (1)(a) and 943.10(2)(a), STATS. There is no dispute that the jury was properly instructed on the underlying armed burglary charge.

[A]n appellate court may not substitute its judgment for that of the trier of fact unless the evidence, viewed most favorably to the state and the conviction, is so lacking in probative value and force that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt. If any possibility exists that the trier of fact could have drawn the appropriate inference from the evidence adduced at trial to find the requisite guilt, an appellate court may not overturn a verdict even if it believes that the trier of fact should not have found guilt based on the evidence before it.

*State v. Poellinger*, 153 Wis. 2d 493, 507, 451 N.W.2d 752, 757-58 (1990) (citation omitted).

## B. Application

This case requires us to consider, for the first time in Wisconsin, the question of whether a defendant can be held liable for felony murder, party to a crime, where a defendant participates with an accomplice in a relevant underlying felony within § 940.03, STATS., and that accomplice kills a pursuing officer during the course of the felony.

As an initial matter, we conclude that the general principles governing party to a crime liability under § 939.05, STATS., when applied to the language of the felony murder statute, are most reasonably construed as holding all participants in the underlying felony liable for any death that results from the acts of their co-conspirators during the commission of such felony.[3] In

---

[3] This conclusion is in step with current Wisconsin jurisprudence concerning party to a crime liability. As the supreme court has explained in the context of being party to a crime of first-degree murder:

this regard, we adopt the reasoning of the District of Columbia Court of Appeals, which, in discussing the requirements for felony murder in its jurisdiction, stated:

> First, the defendant or an accomplice must have inflicted injury on the decedent from which he [or she] died. Second, the injury must have been inflicted in perpetration of a specified felony. No distinction is made between principals and aiders and abettors for purposes of felony murder liability. *Only intent to commit the underlying felony need be proved.* "All accomplices are culpable for the resulting death." This is so because the intent requirement for murder, in the case against an aider and abettor, is satisfied solely by the aider and abettor's participation in the felony that resulted in the killing.

*Prophet v. United States*, 602 A.2d 1087, 1095 (D.C. 1992) (citations omitted; emphasis in original).

■

Adopting the *Prophet* reasoning, we conclude that in the context of felony murder, there is no requirement that a defendant, while committing a crime specified under § 940.03, STATS., have an intent to kill, or directly cause the death of a third party.[4] Our conclusion, how-

It is not necessary that the defendant himself be the one who pulled the trigger. He was convicted not of directly committing the crime himself, but of being party to the commission of it. Thus, it is only necessary for defendant to have been a willing participant. Such participation as would constitute aiding and abetting does not even require that the defendant be present during the killing. . . . One need not perform an act which would constitute an essential element of the crime in order to aid and abet that crime.

*State v. Marshall*, 92 Wis. 2d 101, 122, 284 N.W.2d 592, 601 (1979) (footnote omitted).

[4] As Professors LaFave and Scott have explained:

ever, does not obviate the need for the State to prove that the defendant was "committing" one of the crimes specified in § 940.03, STATS., at the time of the murder.

■

Applying the legal standard set forth in *Prophet* to the facts at hand, the conclusion is inescapable that Chambers was appropriately found guilty of felony murder, party to a crime. First, Chambers' accomplice inflicted injury on Sergeant Tourmo from which he died. Second, the injury was inflicted in perpetration of a specified felony under § 940.03, STATS. There is no dispute that Chambers intended to commit the underlying felony. Thus, he is culpable for the resulting death of Sergeant Tourmo.[5]

---

If A and B have agreed to rob X by killing him, or by killing him if he resists or if he recognizes his robbers or if necessary to effect an escape, A is of course guilty though B is the one who actually fires the fatal shot. *Even though the two have made no such agreement, if in the process of robbing or attempting to rob X B's gun goes off accidentally, killing X, A would be guilty of the felony murder of X as much as B would be, under the rule concerning parties to crime that all parties are guilty for deviations from the common plan which are the foreseeable consequences of carrying out the plan* (an accidental shooting during an armed robbery being a typical example of a foreseeable deviation from the plan to rob).

2 WAYNE R. LAFAVE & AUSTIN W. SCOTT, JR., SUBSTANTIVE CRIMINAL LAW § 7.5, at 212 (1986) (footnote omitted; emphasis added). We conclude that this reasoning also applies to encompass the murder of a police officer responding to the crime against X.

[5] As a point of reference, we note that several other courts considering the issue of accomplice liability in the felony murder context have reached the same result as we have today. For example, in *Echavarria v. State*, 839 P.2d 589, 591-92 (Nev. 1992), two co-defendants—Echavarria and Gurry—attempted to rob a bank in Las Vegas. Gurry was the getaway driver. *Id.* at 592. During the attempted bank robbery, Echavarria shot and killed an FBI agent who was attempting to arrest Echavarria.

## III. CONCLUSION

In this case, we conclude that a defendant can be held liable for felony murder, party to a crime, where a defendant participates with an accomplice in a relevant underlying felony within § 940.03, STATS., and the accomplice kills a pursuing police officer during the commission of the felony. Further, we conclude that the evidence, viewed most favorably to the State and the conviction, is not so lacking in probative value and force that no trier of fact could have found Chambers guilty beyond a reasonable doubt of felony murder, party to a crime.

---

*Id.* Echavarria then fled in the car driven by Gurry. *Id.* Gurry was arrested later that same day at his apartment. *Id.* On appeal, Gurry argued that he was not liable for the death of the FBI agent, "because the felonies in which he participated ended before the murder occurred." *Id.* at 599. The Nevada Supreme Court disagreed:

> [T]he crime of robbery includes acts taken to facilitate the perpetrator's escape. Under the facts of this case, there is ample evidence to support the conclusion that the murder took place during the chain of events which constitutes the attempted robbery, thus subjecting Gurry to the felony murder rule as an aider and abettor.

*Id.* (citation omitted). *See also People v. Smith,* 409 P.2d 222, 232 (Cal. 1966) ("each conspirator is bound by the acts of a confederate in furthering the common design of the conspiracy by escaping or resisting arrest, even though such acts may have been 'dictated by the exigencies of the moment' "); *Commonwealth v. Dellelo,* 209 N.E.2d 303, 306 (Mass. 1965) ("an attempted robbery is not ended merely because one . . . of the robbers cease[s] to desire to proceed, has in mind only a purpose to escape, and shoots in furtherance of that purpose").

*By the Court.*—Judgment affirmed.