STATE of Wisconsin, Plaintiff-Respondent,

v.

Theodore J. KRAWCZYK, Defendant-Appellant.†

Court of Appeals

*No. 02–0156–CR. Submitted on briefs June 12, 2002.—Decided December 19, 2002.*

## 2003 WI App 6

(Also reported in 657 N.W.2d 77.)

† Petition to review denied 4-22-03.

844

On behalf of the defendant-appellant, the cause was submitted on the briefs of *John T. Wasielewski* of *Wasielewski & Erickson*, Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *David J. Becker*, assistant attorney general, and *James E. Doyle*, attorney general.

Before Dykman, Roggensack and Deininger, JJ.

¶ 1. DEININGER, J. Theodore Krawczyk appeals a judgment of conviction entered after he pled guilty to felony murder. He also appeals an order denying his postconviction motion to withdraw his plea. Krawczyk claims that he did not enter his plea knowingly, intelligently, and voluntarily because he was not informed that: (1) a conviction for felony murder requires proof that "his own conduct was a substantial factor in the death"; (2) he could not be convicted as a party to the crime of felony murder; and (3) he could not be convicted of both felony murder and the lesser-included offense of armed robbery. We conclude that the first statement is not the law and that Krawczyk's ignorance of the remaining two did not render his plea unknowing.

¶ 2. We also conclude that the trial court's remedy of vacating Krawczyk's multiplicitous conviction and

846

sentence for the underlying crime of armed robbery is appropriate under the circumstances of this case. That is, we find no basis in the present record for us to vacate Krawczyk's remaining convictions and sentences in order to restore the parties to their pre-plea positions. Accordingly, we affirm the amended judgment of conviction and postconviction order.

## BACKGROUND

¶ 3. The following factual summary is taken from the criminal complaint, which Krawczyk stipulated provided a basis for his plea. Krawczyk and three others devised a plan to rob Frank Fazio, who lived in an apartment above a restaurant. Before leaving for Fazio's residence, Krawczyk handed another man a baseball bat to use in the event Fazio did not willingly give up his money on demand. Krawczyk suspected that matters could then "get rough" and that "something bad would happen." The four men drove to Fazio's residence in the early morning hours.

¶ 4. Krawczyk and the driver waited in the car while the other two men knocked on Fazio's door. Fazio answered, and the men asked if they could come inside to use his telephone to report mechanical difficulties with their car. Fazio agreed. Once inside, the men killed Fazio by beating him with the baseball bat and by stabbing him repeatedly. The men took money, alcohol, and various other items from Fazio's residence and from the restaurant below. One of the men spread gasoline in the basement of the restaurant and ignited it. The men then gathered the stolen items and returned to the car where Krawczyk was waiting.

¶ 5. The police arrested all involved, and the State charged Krawczyk with (1) armed burglary as a party to a crime, (2) armed robbery as a party to a crime, (3)

felony murder as a party to a crime, and (4) felony bail jumping, all carrying repeater enhancements. The felony murder charge alleged that Krawczyk caused Fazio's death "while committing the crime of armed robbery, as a party to the crime." Krawczyk pled guilty to these four charges, the State's only concession having been the dismissal of a fifth count, hiding physical evidence to prevent apprehension of a felon. There was no agreement as to sentencing recommendations.

¶ 6. Before entering his plea, Krawczyk reviewed with his attorney and signed a plea questionnaire. Attached to the questionnaire were copies of pattern jury instructions for the offenses to which he pled, including two on felony murder,[1] and a copy of our opinion in *State v. Chambers*, 183 Wis. 2d 316, 515 N.W.2d 531 (Ct. App. 1994), which addresses the elements of felony murder. Krawczyk told the court that he reviewed these materials with his counsel and that he understood the elements of each charge. After receiving a presentence investigation report, the court sentenced Krawczyk as follows: two concurrent prison terms of forty years for the armed robbery and armed burglary; sixty years concurrent for felony murder; and eleven years consecutive for bail jumping; for a total prison sentence of seventy-one years.

¶ 7. Krawczyk moved postconviction to withdraw his guilty pleas. He claimed, among other things, that he had entered his plea to felony murder unknowingly because he was misinformed regarding the elements of felony murder, and that he had not been told that he could not be convicted of both felony murder and the

---

[1] WISCONSIN JI—CRIMINAL 1030 (Felony Murder) and 1032 (Felony Murder: Death Caused While Committing a Felony as a Party to a Crime).

lesser-included offense of armed robbery. The court denied plea withdrawal but determined that Krawczyk should not have been convicted of both felony murder and the lesser-included offense of armed robbery. Accordingly, the court ordered the judgment of conviction amended to remove the armed robbery conviction and its concurrent sentence, specifically declining to resentence Krawczyk on the remaining counts.

¶ 8. Krawczyk appeals the amended judgment of conviction and the order denying his postconviction motion to withdraw his guilty plea to felony murder.

## ANALYSIS

[1]

¶ 9. In order to be permitted to withdraw his guilty plea, Krawczyk, having been sentenced for the offense, must establish by clear and convincing evidence that a failure to allow withdrawal will result in a manifest injustice. *State v. Black*, 2001 WI 31, ¶ 9, 242 Wis. 2d 126, 624 N.W.2d 363. This burden can be met by a showing that he did not knowingly, voluntarily or intelligently enter the plea. *State v. Giebel*, 198 Wis. 2d 207, 212, 541 N.W.2d 815 (Ct. App. 1995).

¶ 10. Generally, we review a trial court's denial of a motion to withdraw a guilty plea for an erroneous exercise of discretion. *See Black*, 2001 WI 31 at ¶ 9. Here, however, the issue is not what Krawczyk knew or understood regarding the elements of felony murder, but whether the information undisputedly provided to him was legally correct. Our interpretations of the felony murder statute, and of pertinent jury instructions and case law, present only questions of law which we decide de novo. *See, e.g., State v. Neumann*, 179 Wis.

2d 687, 699, 508 N.W.2d 54 (Ct. App. 1993) (Whether jury instructions are a correct statement of the law is a question of law that we review de novo.).

¶ 11. Krawczyk's principal assertion in this appeal is that his plea was unknowing or unintelligent because he was misinformed regarding the elements the State must prove in order to convict him of felony murder. According to Krawczyk, WIS. STAT. § 940.03 (1999–2000)[2] requires the State to prove more than simply that (1) Krawczyk was a party to the crime of armed robbery, and (2) the commission of the armed robbery caused Fazio's death. Relying on certain language in *State v. Oimen*, 184 Wis. 2d 423, 516 N.W.2d 399 (1994), Krawczyk argues that the State must prove that his own, personal conduct was a substantial factor in producing Fazio's death. He claims the jury instructions and case law he reviewed with his attorney at the time of his plea gave him an erroneous understanding of the elements of felony murder, and had it not been for this misinformation, he would not have pled guilty to felony murder.

¶ 12. We note at the outset that Krawczyk makes no claim in this appeal (and he specifically disavowed at his postconviction hearing) that his trial counsel provided ineffective representation. Rather, he focuses his argument on alleged errors in the present pattern jury instructions on felony murder, and as a necessary corollary, on the questionable validity of our holding in *State v. Chambers*, 183 Wis. 2d 316, 515 N.W.2d 531 (Ct. App. 1994). In other words, in Krawczyk's view, even if his defense counsel erred by miscommunicating the

---

[2] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

elements of felony murder, counsel was in good company because not only she, but the criminal jury instructions committee, the trial court and this court share the same misconceptions regarding the proof required to convict a person of felony murder.

¶ 13. We thus begin our analysis of Krawczyk's claim by reviewing the allegedly erroneous jury instructions and our conclusions in *Chambers*. We will then consider the supreme court's analysis in *Oimen*, decided some two months after *Chambers*, to see whether the supreme court implicitly overruled *Chambers*.

¶ 14. Wisconsin's felony murder statute, WIS. STAT. § 940.03, provides as follows:[3]

> Whoever causes the death of another human being while committing or attempting to commit a crime specified in s. 940.225(1) or (2)(a), 943.02, 943.10(2) or 943.32(2) may be imprisoned for not more than 20 years in excess of the maximum period of imprisonment provided by law for that crime or attempt.

WISCONSIN JI—CRIMINAL 1030 specifies the elements of felony murder as follows:

> First, that the defendant (committed) (attempted to commit) the crime of (name of felony).

> Second, that the death of (name of victim) was caused by the (commission of) (attempt to commit) the crime of (name of felony).

(Footnote omitted.)

---

[3] The underlying crimes identified in the statute by section number are: first-degree sexual assault, second-degree sexual assault by use or threat of force or violence, arson, armed burglary, and armed robbery. WISCONSIN STAT. § 940.03 has since been amended to add a sixth underlying crime, carjacking, WIS. STAT. § 943.23(1g). *See* 2001 Wis. Act 109, § 585.

851

¶ 15. The instruction goes on to explain that jurors must first determine beyond a reasonable doubt that the defendant committed (or attempted to commit) the specified underlying felony. If so, they must then decide whether "the relation of cause and effect exists between the death of [the victim] and the (commission of) [or] (attempt to commit) the [specified felony]." *Id.* The necessary causal relationship is further defined as requiring that the completed or attempted felony "was a substantial factor in producing the death." *Id.* In notes accompanying the instruction, the criminal jury instructions committee explains:

> "While committing or attempting to commit" is the phrase used by § 940.03 to identify the connection between the underlying felony and the death. In applying the statutory phrase in the instruction, the Committee adopted the following rationale: the defendant causes the death if he or she was concerned in the commission of the felony and the commission of the felony caused the death. This is consistent with the rationale in the *Oimen* and *Rivera* cases . . . .

Wis JI—Criminal 1030 n.2; *see also* comment preceding n.1, and Wis JI—Criminal 1000, section V., Felony Murder.

¶ 16. In addition to *Oimen*, which we discuss below, the committee also cites our opinion in *Chambers* as supporting its formulation of the elements of felony murder. *See* Wis JI—Criminal 1030, comment preceding n.1. The defendant in *Chambers* was convicted of felony murder after an accomplice fatally shot a police officer during their attempted getaway from an armed burglary. *Chambers*, 183 Wis. 2d at 319. Chambers and the shooter fled from the officer in separate directions, and they "had no further contact or communication" before the shooting. *Id.* at 320. Chambers argued that the

852

evidence was insufficient to convict him because it did not "link him to the murder" of the officer. *Id*. We upheld the conviction, however, concluding that the facts of the case fulfilled what we concluded were the two necessary elements for felony murder liability: (1) the defendant participated in one of the underlying felonies listed in WIS. STAT. § 940.03; and (2) a death resulted from the commission of the felony. *See id*. at 325.

¶ 17. We are of course bound by our holding in *Chambers* unless it has been overruled or modified by the supreme court. *See Cook v. Cook*, 208 Wis. 2d 166, 189–90, 560 N.W.2d 246 (1997). Our discussion would thus be at an end if it were not for Krawczyk's claim that the Wisconsin Supreme Court implicitly overruled or modified *Chambers* in *State v. Oimen*, 184 Wis. 2d 423, 516 N.W.2d 399 (1994). The defendant in *Oimen* had devised a plan to rob a particular individual at his home. *Id*. at 429. Oimen explained his plan to some accomplices, drove with his accomplices to the robbery scene, and remained in the vehicle while his accomplices attempted to enact his plan. *Id*. The plan failed when, during the course of the robbery, the intended victim grabbed a gun and fatally shot one of Oimen's accomplices. *Id*. at 430–31. Oimen was convicted of felony murder. *Id*. at 433. We affirmed the conviction in an unpublished opinion, and the Wisconsin Supreme Court granted review. *Id*. at 434.

¶ 18. The supreme court in *Oimen*, according to the Seventh Circuit, faced a "charging decision [that] catches the eye." *Oimen v. McCaughtry*, 130 F.3d 809, 810 (7th Cir. 1997) (affirming the denial of Oimen's subsequently-filed habeas corpus petition). Specifically, the supreme court framed the issue before it as "whether a defendant may be charged with felony

murder under sec. 940.03, Stats., when that defendant's co-felon is killed by the intended victim of the underlying felony." *Oimen*, 184 Wis. 2d at 434.

¶ 19. To answer the question, the court examined the elements of felony murder under WIS. STAT. § 940.03, which it described as causing a death "while committing or attempting to commit one of the five listed felonies." *Id*. at 435. The court explained that a person "causes" a death when his or her conduct is a "substantial factor" in bringing about that result. *Id*. at 435–36. The court noted that a " 'substantial factor' need not be the sole cause of death," and therefore, the fact that another may have fired the fatal shot is "irrelevant for purposes of sec. 940.03." *Id*. at 436. The court then analyzed whether "Oimen's conduct caused, i.e., was a substantial factor in, [the victim's] death." *Id*. at 437. The court concluded that the evidence of Oimen's role as the "ringleader" in the attempted armed robbery, which rendered him a party to that crime, was sufficient to convict him of felony murder despite his physical remoteness from the shooting which killed his accomplice. *Id*.

¶ 20. Krawczyk's argument that his plea was unknowing hinges on his reading of *Oimen* as requiring the State to prove that "his own conduct was a substantial factor in the death," thereby rendering *Chambers* and the felony murder jury instructions incorrect statements of the law. We acknowledge that some language in the *Oimen* opinion, taken out of context, would support Krawczyk's contention. Other language in the opinion, however, plainly does not, and instead supports the criminal jury instruction committee's view that the necessary causal link must exist between a listed *felony* and the *death* which ensues. For example:

> The Judicial Council and Homicide Law Committee meeting summaries . . . clearly indicate that the

legislature chose to limit liability for felony murder only to *deaths that occurred as a result of the commission or attempt to commit five inherently dangerous felonies* . . . . This is the limitation that the legislature chose to impose, rather than to place limitations on the class of victim or on the person who would be the immediate cause of death.

*Id.* at 441–42 (emphasis added) (footnote omitted). Similarly, the court also explains later in the *Oimen* opinion that a "person convicted of a felony as a party to the crime becomes a principal to a *murder occurring as a result of that felony.*" *Id.* at 449 (emphasis added).

¶ 21. We note next the obvious fact that the supreme court did *not* expressly overrule *Chambers*, or even mention it, even though our opinion preceded the *Oimen* opinion by some two months. More importantly, however, in analyzing whether the supreme court overruled or modified our analysis in *Chambers* by implication, we must look to what the court *did* in *Oimen*, not merely to what it *said.* Oimen was a conspirator and an aider and abettor of an armed robbery. He did not enter the premises of the intended crime, but, like Krawczyk, he waited in a nearby vehicle. When it considered Oimen's conduct, the supreme court concluded that, notwithstanding his physical separation from the scene of the fatal shooting, Oimen was plainly a party to the underlying crime of attempted armed robbery (in fact, its "ringleader"), and thus his conduct was a substantial factor in causing the death which ensued from it. We thus view the court's holding as affirming our conclusion in *Chambers* that it is the defendant's conduct in facilitating the underlying crime that triggers felony murder liability when a death results from the crime, there being no requirement that a defendant's conduct be physically related to the fatal shot or assault.

¶ 22. Finally, we note that if we were to endorse Krawczyk's view of the proof required to convict a person of felony murder, the felony murder statute would be rendered virtually meaningless. Krawczyk maintains that a jury must evaluate each participant's individual conduct as it relates to the physical causation of a death. In other words, notwithstanding the fact that four individuals acted in concert to accomplish an armed robbery, under Krawczyk's interpretation of Wis. Stat. § 940.03, a jury could conclude that only the direct actors—in this case, the two who went into the residence and beat and stabbed Fazio—had caused the death, and those who only helped plan the robbery or facilitated a getaway did not engage in conduct causing the death. We conclude that this result would be contrary to the legislature's intent in enacting § 940.03.

¶ 23. As the authors of a law review article cited by the court in *Oimen* point out, those whose actions directly cause a death are typically charged and convicted of another degree of homicide, either intentional or reckless, under statutes other than Wis. Stat. § 940.03. *See* Walter Dickey, David Schultz and James L. Fullin, Jr., *The Importance of Clarity in the Law of Homicide: The Wisconsin Revision,* 1989 Wis. L. Rev. 1323, 1366. The legislative intent behind the felony murder statute is thus to reach more remote actors, those whose conduct in facilitating one of a handful of inherently dangerous felonies sets the stage for a death which results from the commission of the crime. As the supreme court recognized in *Oimen,* the legislature enacted § 940.03 to send a message to would-be participants in the selected felonies: " 'There is fair warning in the statute that if you cause death while embarked on these crimes you'll get life imprisonment whether or

not you intend[ed] to kill.' " *Oimen*, 184 Wis. 2d at 440 (quoting a member of the drafting committee) (footnote omitted).[4]

¶ 24. In summary, we conclude that the supreme court in *Oimen* did not discard or modify the elements of felony murder as we set them forth in *Chambers*, and as the criminal jury instructions committee has adopted them in the felony murder jury instructions. To the contrary, in our view, the *Oimen* holding affirms that felony murder liability exists if a defendant is a party to one of the listed felonies from which a death results. Accordingly, we conclude that the copies of the *Chambers* decision and of the felony murder jury instructions which Krawczyk's counsel reviewed with him and attached to the plea questionnaire fully informed Krawczyk of the elements of WIS. STAT. § 940.03 to which he pled. Krawczyk has thus failed on this ground to establish that his guilty plea to felony murder was not knowing, intelligent and voluntary.

¶ 25. Krawczyk next argues that he was incorrectly charged as "a party to the crime" of felony murder and that this error also rendered his plea to that offense

---

[4] The court also recognized that, because the final version of WIS. STAT. § 940.03 adopted by the legislature creates a penalty enhancer of up to twenty years instead of a mandatory life sentence, the legislature intended that the remoteness of an individual's conduct from the circumstances of the death becomes a factor for consideration at sentencing, instead of a consideration in determining guilt or innocence. *State v. Oimen*, 184 Wis. 2d 423, 444, 516 N.W.2d 399 (1994) (" 'Sentencing becomes the forum for weighing the inherent dangerousness of the defendant's conduct, the foreseeability of the death, and the culpable mental state of the particular defendant with respect to the death.' " (quoting Walter Dickey, David Schultz and James L. Fullin, Jr., *The Importance of Clarity in the Law of Homicide: The Wisconsin Revision*, 1989 Wis. L. Rev. 1323, 1371)).

857

unknowing. We agree with Krawczyk that the State did not need to include the party-to-a-crime allegation in the felony murder charge. Because "[a] person convicted of a felony as a party to the crime becomes a principal to a murder occurring as a result of that felony," it is "redundant and unnecessary" to charge a defendant with felony murder as a party to the crime. *Oimen*, 184 Wis. 2d at 449. Krawczyk, however, does not explain how or why the inclusion of a "redundant" aspect in a charge deprives a defendant of information necessary to enter a knowing plea. We conclude, as did the supreme court in *Oimen*, that "no prejudice has been demonstrated" by reason of the party-to-a-crime allegation in the felony murder charge, and thus it does not justify a withdrawal of Krawczyk's plea. *Id.*

¶ 26. Krawczyk also argues that his pleas were unknowing because his trial counsel did not inform him that he could not be convicted of both felony murder and the lesser-included offense of armed robbery. We agree with Krawczyk, and so, ultimately, did the trial court, that he should not have been convicted of both felony murder and the underlying armed robbery. To prove felony murder, the State must prove all of the elements of the underlying felony plus the additional element of causing a death. *See State v. Gordon*, 111 Wis. 2d 133, 135–36, 330 N.W.2d 564 (1983). Thus, the underlying felony is a lesser-included offense of felony murder, and constitutional guarantees against double jeopardy prohibit conviction for both crimes. *Id.* The trial court, in response to Krawczyk's postconviction motion, ordered the judgment of conviction amended to delete the armed robbery conviction and the concurrent sentence the court had imposed for that offense.

¶ 27. We note first that, with respect to this claim, Krawczyk impliedly argues that his trial counsel's performance was deficient. Unlike Krawczyk's contentions regarding the elements of felony murder, there can be little question that at the time of his plea, it was a matter of settled law that the underlying crimes in WIS. STAT. § 940.03 are lesser-included offenses of felony murder. *See Gordon*, 111 Wis. 2d at 135–36. This means that Krawczyk's counsel should have moved to dismiss the armed robbery count, or, at a minimum, she should have advised Krawczyk not to plead guilty to both the armed robbery and felony murder. Krawczyk, however, did not raise a claim of ineffective assistance of counsel in his postconviction motion, and in fact, he specifically disavowed the claim at the postconviction hearing. We are thus deprived of the benefit of counsel's explanation as to what she may or may not have discussed with her client regarding this issue, and/or her reasons for not objecting to the multiplicitous charges in the amended information.

¶ 28. Be that as it may, we note that Krawczyk testified at the postconviction hearing that his counsel did not tell him he could not be convicted of both felony murder and the underlying armed robbery, nor did she discuss with him the concept of "a lesser-included offense." Krawczyk was not asked, however, nor did he testify, that he would not have pled guilty to felony murder had he known of the possibility of going to trial on the felony murder charge in hopes of convincing the jury to find him guilty of only the lesser-included offense of armed robbery. The trial court concluded that Krawczyk suffered no "prejudice" by his lack of knowledge that he could not be convicted of both crimes. The court's remarks in its ruling imply that it would have found implausible a claim by Krawczyk that, although

859

he opted to plead guilty to offenses having a total exposure of 181 years of imprisonment with no concession from the State on its sentencing recommendation, he would not have tendered guilty pleas to offenses exposing him to 131 years of imprisonment.

¶ 29. We conclude that Krawczyk's plea to both felony murder and the underlying armed robbery, the latter conviction having been set aside, does not provide a basis for withdrawal of his plea to felony murder. First and foremost, the record is devoid of any evidence establishing that Krawczyk would not have pled guilty to felony murder (and to the other two offenses of which he remains convicted) had he known of the multiplicity of the felony murder and armed robbery charges. Krawczyk's failure to testify that he would not have pled guilty to felony murder had he known of the multiplicity is not a minor omission. Had he so testified, he would have been subject to cross-examination on the point, and the State might have seen fit to present rebuttal testimony from Krawczyk's trial counsel. Moreover, the failure to testify in this regard deprives us of the trial court's assessment of the credibility of a claim by Krawczyk that he would not have pled guilty to felony murder had he known of the double jeopardy violation.[5]

---

[5] We also note that no affidavit from Krawczyk accompanied his postconviction motion. The motion contains counsel's assertions that Krawczyk was misadvised regarding his total exposure to imprisonment, and that "had he been properly advised and proceeded to trial, he could have defended against the felony murder charge by requesting the jury be instructed as to armed robbery party to a crime as a lesser included offense." Like Krawczyk's postconviction testimony, however, the motion does *not* specifically allege that if Krawczyk had known this he would not have pled guilty to felony murder.

¶ 30. Even if Krawczyk had made a better record on this crucial point, however, we agree with the trial court that it is highly unlikely the now-corrected charging error adversely affected Krawczyk's ability to knowingly enter guilty pleas to felony murder and the other two offenses. His only argument to this effect is that, had he known "that he could not be convicted of both these offenses," he would have "argue[d] to a jury that while he may have been party to armed robbery, his own conduct was not a substantial factor in the death of Mr. Fazio." To a large extent, this argument duplicates his first contention regarding the proof necessary to convict of felony murder, a contention we have rejected. That is, if Krawczyk's argument is that he would have foregone a plea to felony murder in the belief that he could defend against the charge at trial on the basis that his own conduct, while clearly rendering him culpable for the armed robbery, was too remote from the death for felony murder liability, *that* belief would have been erroneous.

¶ 31. Finally, we note that Krawczyk also argues that "[d]eletion of the conviction and sentence for armed robbery was not an adequate remedy" for the double jeopardy violation. He cites the following passage from *State v. Robinson*, 2002 WI 9, 249 Wis. 2d 553, 638 N.W.2d 564, in support:

> We conclude that when an accused successfully challenges a plea to and conviction on one count of a two-count information on grounds of double jeopardy and the information has been amended pursuant to a negotiated plea agreement by which the State made charging concessions, ordinarily the remedy is to reverse the convictions and sentences, vacate the plea agreement, and reinstate the original information so

> that the parties are restored to their positions before the negotiated plea agreement.

*Id.* at ¶ 31. The supreme court makes clear later in the opinion, however, that its use of the qualifier "ordinarily" in the quoted sentence means that other remedies are *not* precluded in appropriate cases: "[T]he appropriate remedy depends on the totality of the circumstances. A court must examine all of the circumstances of a case to determine an appropriate remedy for that case, considering both the defendant's and State's interests." *Id.* at ¶ 48.

¶ 32. The defendant in *Robinson* sought the reversal of one of two multiplicitous convictions and its attendant sentence, requesting the court to leave intact the remaining conviction and sentence. *Id.* at ¶ 17. The State, however, sought vacation of the plea agreement and reinstatement of the original charges. *Id.* at ¶ 20. The court concluded that, because the reversal at the defendant's request of one of the two convictions to which the defendant had pled no contest constituted a breach of his plea agreement with the State, the interests of the State required the restoration of the parties to their positions prior to the agreement. *See id.* at ¶¶ 49–55. By contrast, in this case, the State does not request that remedy, asserting that if we uphold Krawczyk's pleas to the remaining counts, we need not even address the remedy issue. We disagree that the issue can be avoided, but we nonetheless affirm the trial court's postconviction order.

¶ 33. Krawczyk pled guilty to two charges that were multiplicitous, one of which has been set aside by the trial court. The issue of the adequacy of the trial court's remedy is thus before us even if, as we have concluded, the remaining convictions are valid. The

trial court declined to vacate the remaining sentences because it concluded that, notwithstanding the reversal of the armed robbery conviction and sentence, the sentences it originally imposed on the remaining counts were appropriate:

> I looked at whether there is a need to resentence in this case. It is clear to the Court that the way the evidence, the presentence investigation report recommended and the way the Court sentenced, that the Defendant is not prejudiced by the court simply deleting the sentence for the armed robbery as a concurrent sentence at this time; and that is, in fact, what he received—or a concurrent sentence except for the bail jumping.

The court thus acknowledged that it viewed the armed robbery, armed burglary and felony murder convictions as essentially one offense for sentencing purposes, having imposed concurrent terms for the three crimes, with the sixty-year felony murder term being controlling.

¶ 34. We see no reason to disturb the remedy the trial court granted for the double jeopardy violation. First, when a multiplicitous count is reversed on appeal, that action may create uncertainty regarding what sentences the trial court would have imposed on the remaining counts had it known of the lesser number of valid convictions. *See State v. Church*, 2002 WI App 212, ¶ 13, 257 Wis. 2d 442, 650 N.W.2d 873, *review granted*, 2002 WI 121, 257 Wis. 2d 116, 653 N.W.2d 888 (Wis. Oct. 21, 2002) (No. 01–3100) (noting that "the reason for vacating all sentences rather than just the one held invalid [is] to give the trial court the opportunity to resentence with a corrected understanding that there was only one valid conviction"). Here, however, relief from the multiplicitous conviction was granted by the sentencing court. The court expressed that it saw no

reason to resentence Krawczyk because the remaining convictions and sentences satisfactorily achieved the court's sentencing goals.

¶ 35. Second, we observe that setting aside the remaining convictions and sentences and restoring the parties to their pre-plea positions is not necessary to further the State's interests. As we have noted, the State is not requesting such a disposition. It is apparently satisfied that leaving intact the seventy-one-year total sentence on the remaining charges does not substantially deprive it of the benefit of the plea agreement it made with Krawczyk. *See Robinson*, 2002 WI 9 at ¶¶ 47, 52. A restoration of the single dismissed charge would increase Krawczyk's exposure to imprisonment by only eight years, which is not a significant period in relation to the 131 years he faced on the remaining, unreversed charges to which he pled guilty. Accordingly, unlike in *Robinson*, there appears to be no need to vacate all remaining sentences and convictions in order to remedy a breach of the plea agreement. *See id.*

¶ 36. Finally, we must consider Krawczyk's interests. *Id.* at ¶ 31. He claims the trial court's remedy of vacating only the concurrent sentence for armed robbery is inadequate because he

> entered a guilty plea to felony murder without understanding the nature of the charge. The deletion of the armed robbery count does nothing to remedy this infirmity. Thus, at a minimum, Mr. Krawczyk should be granted leave to withdraw his plea to the felony murder count.

Krawczyk's contention, however, is nothing more than a reformulation of the argument we have addressed above in rejecting his claim for plea withdrawal on the basis of an unknowing plea. That is, Krawczyk offers no

reason why, in light of the reversal of one multiplicitous conviction and sentence, his legitimate interests require the reversal of all remaining convictions and sentences.

¶ 37. Perhaps Krawczyk believes that, given the passage of time, the State might not now be able to prove all of the remaining charges. Alternatively, perhaps he believes he would fare no worse in resentencing than the seventy-one-year sentence of imprisonment he is currently serving for the remaining convictions. Krawczyk articulates neither of these beliefs. Even if he had, however, we would not find either one to be a proper reason to set aside the remaining convictions in this case. Just as a defendant should not be vindictively penalized for successfully challenging one of several convictions on appeal, *see Church*, 2002 WI App 212 at ¶¶ 16–17, neither should a defendant obtain a windfall from what is, in essence, a breach of his plea agreement with the State. That is, Krawczyk is entitled to be relieved of the consequences flowing from the wrongful conviction, but nothing more.

¶ 38. Thus, Krawczyk's argument for the reversal of all remaining convictions and sentences boils down to little more than a request that we grant the "ordinary" remedy cited by the supreme court in *Robinson*, regardless of the circumstances of this case. He notes that the court in *Robinson* discussed an Indiana case, *Jordan v. State*, 676 N.E.2d 352 (Ind. Ct. App. 1997), where the defendant had pled guilty to both felony murder and the underlying robbery. *Robinson*, 2002 WI 9 at ¶ 28. The Indiana Court of Appeals simply "vacated the robbery conviction and sentence and allowed the felony murder conviction and sentence to stand." *Id.* at ¶ 30.

The supreme court described the Indiana court's rationale as follows:

> Because Jordan had neither alleged nor proved that he would not have entered the plea agreement had he been properly advised of the principles of double jeopardy, and because he neither asserted nor proved that his guilty plea was involuntary or unintelligent, the Indiana court of appeals concluded that it did not have to vacate the plea agreement and did not have to reinstate the original charges.
>
> ... Although the effect of the court of appeals' decision was to reduce a 110–year sentence to a 60–year sentence so that the State did not get the full benefit of its plea agreement, the Indiana court of appeals believed that it had taken the wisest path. The court of appeals wrote that its remedy was "the wisest in that it forecloses the possibility that Jordan will be set free in the event the State does not have sufficient evidence to reprosecute a ten year old murder case." The remedy was the best one under the circumstances to avoid a violation of the accused's constitutional guarantee against double jeopardy and at the same time protect the public interest in incarcerating a murderer.

*Id.* at ¶¶ 29–30 (footnote omitted).

¶ 39. The supreme court concluded that the facts in *Jordan* were distinguishable from those before it in *Robinson*, but that the rationale and holding of the Indiana case supported its conclusion to vacate Robinson's remaining conviction and sentence and reinstate the original charges against him. *Id.* at ¶ 31. Furthermore, the court observed that

> *Jordan* supports our conclusion that under some circumstances the latter remedy might not be appropriate. We agree with the *Jordan* decision that a court

should examine the available remedies and adopt the one that fits the circumstances of the case, considering both the defendant's and the State's interests.

*Id.*

¶ 40. Krawczyk argues that we, too, should distinguish *Jordan* because of his claim that his plea to felony murder was unknowing, and that we must vacate his remaining convictions as the supreme court did in *Robinson*. We note again, however, that we have rejected Krawczyk's challenges to the validity of his plea. We conclude that the rationale of the *Jordan* court, endorsed by the supreme court in *Robinson* as supporting its conclusion that the "ordinary remedy" is not a universal one, should govern here. That is, we see no reason why the legitimate interests of either the State or Krawczyk, or of the trial court in achieving its sentencing goals, require us to do other than affirm the postconviction order which vacated only Krawczyk's conviction and sentence for armed robbery.

## CONCLUSION

¶ 41. For the reasons discussed above, we affirm the appealed judgment and order.

*By the Court.*—Judgment and order affirmed.