STATE of Wisconsin,
Plaintiff-Respondent,

v.

Jarmal NELSON,
Defendant-Appellant.†

Court of Appeals

*No. 2004AP1954–CR. Submitted on briefs February 2, 2005.
—Decided April 19, 2005.*

2005 WI App 113

(Also reported in 701 N.W.2d 32.)

† Petition to review dismissed.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *William J. Tyroler*, assistant state public defender, of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Peggy A. Lautenschlager*, attorney general, and *Shannon Wittenberger*, assistant attorney general.

Before Fine, Curley and Kessler, JJ.

¶ 1. CURLEY, J.   Jarmal Nelson appeals from the judgment, entered following his guilty pleas, convicting him of three counts of first-degree sexual assault (two counts alleged sexual intercourse and one count alleged sexual contact), one count of kidnapping, and one count of armed burglary, all while concealing his identity, as a party to a crime. He also appeals from the order denying his motion for postconviction relief.

¶ 2.   Nelson argues that while the trial court properly exercised its discretion when, in considering his pre-sentencing motion seeking to withdraw all of his pleas, the trial court acknowledged that he had established a fair and just reason to withdraw his pleas to the three counts of first-degree sexual assault, the trial court erroneously exercised its discretion when, in denying the motion, it found that the State would be substantially prejudiced if Nelson was allowed to withdraw his pleas. He also contends that the trial court erroneously exercised its discretion when, at his post-sentencing motion to both withdraw his plea to the sexual assault counts on a new theory and to renew his earlier motion to withdraw all of his pleas, the trial court concluded that the State had proved by clear and convincing evidence that Nelson's prior attorney had explained to him all of the elements of proof needed to convict him of the charge of first-degree sexual assault alleging sexual contact, and refused his request to withdraw his other pleas. If successful in withdrawing some of his pleas, he also argues that he is entitled to withdraw all of his pleas "because a partial plea withdrawal repudiates the entire plea bargain," citing *State v. Robinson*, 2002 WI 9, 249 Wis. 2d 553, 638 N.W.2d 564, as support.

¶ 3.   With regard to the pre-sentencing motion, we agree with the trial court that Nelson presented a "fair

and just reason" for withdrawing his guilty pleas to the three counts of first-degree sexual assault. However, we disagree with the trial court's determination that the State met its burden of proving it would be substantially prejudiced if Nelson was allowed to withdraw his pleas. Consequently, we reverse those convictions and remand for a new trial on those three counts. Finally, we are not persuaded that our decision to permit Nelson to withdraw his guilty pleas to three counts requires a withdrawal of the two remaining convictions. Because we conclude that Nelson is entitled to withdraw his pleas to the three sexual assault charges, it is not necessary for us to address the remaining argument regarding Nelson's post-sentencing motion. *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663 (1938) (only dispositive issues need be addressed).

## I. BACKGROUND.

¶ 4. In October 2002, Nelson was charged with: (1) three counts of first-degree sexual assault, two counts alleging sexual intercourse and the remaining count alleging sexual contact, all while concealing his identity, as a party to a crime, contrary to WIS. STAT. §§ 940.225(1)(b) (2001–02),[1] 939.641 and 939.05; (2) one count of kidnapping, while concealing his identity, as a party to a crime, contrary to WIS. STAT. §§ 940.31(1)(b), 939.641 and 939.05; (3) one count of armed burglary, while concealing his identity, as a party to a crime, contrary to WIS. STAT. §§ 943.10(2), 939.641 and 939.05; (4) one count of armed robbery, while concealing his identity, as a party to a crime, contrary to WIS. STAT. §§ 943.32(1)(a) and (2), 939.641 and 939.05;

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

and (5) one count of operating a vehicle without owner's consent, as a party to a crime, contrary to Wis. Stat. §§ 943.23(2) and 939.05. These charges resulted from an incident that occurred approximately one year earlier, on September 11, 2001, when Will McGee and a woman friend, L.D.C., reported to the police that, as L.D.C. and McGee were parking a van at 3:00 a.m. behind a residence located on North 35th Street in Milwaukee, four armed and masked men approached them, ordered them out of the car, and told them to undress. After they complied, one of the men, who went by the name "Jamaal" or something similar, took L.D.C. to the rear door of the residence where she was ordered to unlock the door. Once inside the residence, "Jamaal" went through L.D.C.'s purse and then had nonconsensual sexual intercourse with her until his accomplices interrupted him. L.D.C. was then ordered to unlock the door to the upper unit and, once inside, the men began to remove items from the unit such as a television set, a stereo and jewelry. L.D.C. was forced to carry stereo speakers back to the van and two of the men then drove away in it. Another left saying he was "going back to the station wagon." "Jamaal" remained behind and committed two additional acts of sexual assault of L.D.C. and then left, walking down the alley. Some time later, the computer database produced a match between Nelson's DNA and the DNA of the man who assaulted L.D.C., which resulted in the charges against him.

¶ 5. As the result of a plea negotiation, in February 2003, Nelson pled guilty to one count of kidnapping, one count of burglary, and three counts of first-degree sexual assault.[2] The trial court ordered a presentence

---

[2] The judgment roll and the judgment of conviction state that Nelson pled guilty on February 13, 2003. However, the

investigation report. One month later, Nelson filed a *pro se* motion requesting a new attorney, claiming that his attorney was ineffective. His attorney was allowed to withdraw.

¶ 6. Prior to sentencing, Nelson's new attorney filed a motion seeking to withdraw all of Nelson's guilty pleas based on the fact that Nelson's previous counsel neglected to advise Nelson before he entered his guilty pleas that, as a result of his convictions for the sexual assaults, he could be committed as a sexually violent person pursuant to Wis. Stat. ch. 980. At the onset of the hearing on Nelson's request to withdraw his pleas, the trial court ruled that should the three counts of first-degree sexual assault be reinstated and the guilty pleas withdrawn, Nelson was not entitled to withdraw the other two guilty pleas. Both Nelson and his former attorney testified. Afterwards, the trial court found that Nelson had established a "fair and just reason" for allowing him to withdraw his guilty pleas, but that the State would be prejudiced if he was allowed to do so because the sexual assault victim's whereabouts were temporarily unknown. Several months later, the trial court sentenced Nelson to twenty-five years' imprisonment and ten years' extended supervision on each count, to be served concurrently.

¶ 7. Following the appointment of postconviction counsel, Nelson filed a motion seeking to withdraw his guilty pleas. In this motion, Nelson renewed his request to withdraw his pleas due to the failure of his attorney to tell him that he could be subject to a Chapter 980 commitment as a sexually violent person, and he al-

transcript reflects, and one of the witnesses testified, that the guilty pleas were entered on February 14, 2003. On remand, the trial court should determine which is the correct date and correct the judgment of conviction, if necessary.

leged for the first time that his attorney failed to advise him that one of the elements of the first-degree sexual assault charge alleging sexual contact was that the sexual contact had to be for the purpose of sexual gratification or the victim's humiliation. The motion was denied.

## II. ANALYSIS.

¶ 8. Nelson argues that the trial court erroneously exercised its discretion when it failed to allow him to withdraw his guilty pleas to the three counts of first-degree sexual assault. He agrees with the trial court's finding that because he did not know that his convictions made him eligible for Chapter 980 commitment, he had a fair and just reason to withdraw his pleas. However, he disagrees with the trial court's conclusion that if he had been allowed to withdraw his guilty pleas, the State would have been substantially prejudiced.

¶ 9. The State, somewhat disingenuously, insists that the trial court "did not clearly indicate whether it was finding that Nelson's claimed basis was a fair and just reason," and proceeds to argue that Nelson failed to present a fair and just reason for withdrawing his guilty pleas to the sexual assault charges. The State points to the fact that Nelson had, as a juvenile, "a prior qualifying substantiation," and was presumably warned of the possibility of a Chapter 980 commitment. This, coupled with his attorney's testimony that it was his practice to review such ramifications, like sexually violent person commitments, with his clients, leads the State to claim no "fair and just reason" was established. The State also submits that, even if a fair and just reason was estab-

510

lished, the prosecution would have been substantially prejudiced if Nelson had been allowed to withdraw his pleas.

¶ 10. "The question of whether a defendant may withdraw his plea is left to the sound discretion of the [trial] court." *State v. Bollig*, 2000 WI 6, ¶ 28, 232 Wis. 2d 561, 605 N.W.2d 199. "In order to sustain a [trial] court's discretionary decision to deny a plea withdrawal, we must ensure that the court's determination was made upon the facts of record and in reliance on the appropriate and applicable law." *Id.*, ¶ 41. As such, "[w]e will find an erroneous exercise of discretion if the court improperly relied upon irrelevant or immaterial factors." *Id.*

¶ 11. "A defendant seeking to withdraw a plea of guilty or no contest prior to sentencing must show that there is a fair and just reason, for allowing him or her to withdraw the plea." *State v. Kivioja*, 225 Wis. 2d 271, 283, 592 N.W.2d 220 (1999) (citation omitted). A fair and just reason is "some adequate reason for defendants change of heart[,] . . . other than the desire to have a trial." *State v. Canedy*, 161 Wis. 2d 565, 583, 469 N.W.2d 163 (1991) (citation omitted). The burden is on the defendant to prove a fair and just reason for withdrawal of the plea by a preponderance of the evidence. *Id.* at 583–84. If a defendant makes the necessary showing, "the court should permit the defendant to withdraw his or her plea unless the prosecution would be substantially prejudiced." *Kivioja*, 225 Wis. 2d at 283–84. "[O]nce the defendant presents a fair and just reason, the burden shifts to the State to show substantial prejudice so as to defeat the plea withdrawal." *Bollig*,

232 Wis. 2d 561, 34. The circuit court must apply this test liberally. *Kivioja*, 225 Wis. 2d at 284.

¶ 12.   We first address the State's claim that the trial court never determined that Nelson had shown a fair and just reason for withdrawing his pleas to the three sexual assault charges and that Nelson was aware of the possibility of a Chapter 980 commitment because of a previous charge. Nelson testified that he was unaware that a conviction could lead to his being committed as a sexually violent person. His former attorney testified that he had no "independent recollection" of discussing Chapter 980 with Nelson. Contrary to the State's assertion, the trial court found that Nelson had met his burden of proof and established a "fair and just reason." The trial court explained:

> THE COURT:   All right. The Court has to make a determination, first of all, whether there's a fair and just reason to allow the defendant to withdraw his plea. And the Court believes that the law is very liberal with regard to that, and the Court believes that *that is the case with regard to Counts 3, 4 and 5.* That's what is being claimed here, that the collateral consequences of the pleas to three sexual assault charges are what he did not know about, and that would be certainly a problem for him.

(Emphasis added.) Following this discussion, the trial court then went on to address the question of whether the State was substantially prejudiced, and seemingly concluded that it would be.

¶ 13.   As to the State's next contention that no fair and just reason was established because Nelson was well aware of the possibility of a Chapter 980 commitment as a sexually violent person, the State asserts:

> Nelson's claims are not entirely credible. First, he was adjudicated delinquent for a first-degree sexual assault of a child as a juvenile, also a qualifying offense for Chapter 980 proceedings, and placed at Lincoln Hills as a result of this finding. During his testimony, Nelson admitted that he had first became aware of Chapter 980 civil commitments when he was at Lincoln Hills.

(Record citations omitted.) Although the record reflects that at age thirteen Nelson was charged with first-degree sexual assault, and he was adjudicated on that charge in the Juvenile Court, nowhere in the record is there confirmation that Nelson was advised of the possibility of a Chapter 980 commitment. Moreover, the only information which Nelson admitted to having before his second attorney's disclosure about Chapter 980 commitments is reflected in his answer to the State's questions:

> [ASST. DISTRICT ATTORNEY]:   Mr. Nelson, you were aware back in Lincoln Hills about this law?

> THE DEFENDANT:   It was – It was brought up briefly.

> [ASST. DISTRICT ATTORNEY]:   And what did you understand back then [that] it meant?

> THE DEFENDANT:   That you just had to register. It wasn't anything about like going to prison and having to keep – or better way to put it like stay in prison after you finish your term. I never knew that.

Thus, in light of the state of the record, there is little support for the State's contention that Nelson was aware that he faced the possibility of a Chapter 980 commitment as a sexually violent person before he pled guilty. Consequently, the underpinnings for two of the State's arguments are on shaky ground.

¶ 14.   In determining whether the trial court properly determined that a fair and just reason was established, we find the holding in *Bollig* particularly instructive. There, Bollig pled no contest to a reduced charge of attempted sexual assault of a child under the age of thirteen. Before he was sentenced, he sought to withdraw his plea because he had not been told that a conviction would require him to register as a convicted sex offender. On appeal, the State conceded that Bollig had presented a fair and just reason for withdrawing his plea, and the supreme court agreed, stating:   "When viewed liberally, as required under the *Libke* [*v. State*, 60 Wis. 2d 121, 208 N.W.2d 331 (1973),] standard, we conclude that Bollig's lack of knowledge as to the consequences of his plea constituted a fair and just reason." *Bollig*, 232 Wis. 2d 561, ¶ 31.

¶ 15.   Nelson was also unaware of the consequence of his pleas—that he could be subject to a Chapter 980 commitment as a sexually violent person. Just like the lack of knowledge as to the sex offender registration requirement is a fair and just reason to withdraw one's plea, so too is the lack of knowledge that one is now eligible for a Chapter 980 commitment a fair and just reason. In fact, eligibility for a Chapter 980 commitment has the potential for far greater consequences than registering as a sex offender. Sex offender registration merely centralizes information already in the public domain. A Chapter 980 commitment, however, could be lifelong.

¶ 16.   Thus, we, like the trial court, are satisfied that Nelson presented a fair and just reason for the withdrawal of his pleas to the three counts of first-

degree sexual assault, and the burden accordingly shifted to the State to prove substantial prejudice.[3]

¶ 17.  We next turn to the question of whether the State met its burden of proof. We can find little case law touching on what constitutes substantial prejudice. The dictionary definition of "substantial" includes the words "important" and "essential." *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2280 (1993). We conclude that the prejudice that need be shown to merit a denial of the withdrawal of a plea must be significant in order to trump a defendant's fair and just reason.

¶ 18.  In *Bollig,* our supreme court was satisfied that substantial prejudice was shown because, as the trial court concluded, the effects of any further delay would "hamper the [four-and-one-half-year-old] victim's ability to recall pertinent events." 232 Wis. 2d 561, ¶¶ 43, 46. Several federal cases have also addressed the issue and found that withdrawal of a plea would present a substantial prejudice to the government under the following circumstances:   having once again to provide protection for endangered witnesses during trial, *United States v. Trott,* 779 F.2d 912, 915 (3d Cir. 1986); having to assemble witnesses after co-defendant's acquittal when joint trial was possible, *Government of the Virgin Islands v. Berry,* 631 F.2d 214, 221–22 (3d Cir. 1980); death of a chief government witness, *United States v. Vasquez-Velasco,* 471 F.2d 294, 294–95 (9th Cir.

---

[3] While in *State v. Myers,* 199 Wis. 2d 391, 544 N.W.2d 609 (Ct. App. 1996), this court affirmed the trial court's refusal to permit withdrawal of a guilty plea to a first-degree sexual assault based upon Myers' claim that he was never told of the possibility of a WIS. STAT. ch. 980 commitment, Myers' request was made after sentencing in a postconviction motion and, thus, was subject to a different and more stringent test.

1973) (per curiam); when physical evidence is discarded, *United States v. Jerry*, 487 F.2d 600, 611 (3d Cir. 1973); and when other defendants with whom defendant had been joined for trial had already been tried in a lengthy trial and defendant's plea was taken mid-trial, *State v. Lombardozzi*, 436 F.2d 878, 881 (2d Cir. 1971).

¶ 19.  Contrasting those reasons with the circumstances present here, we conclude the State failed to prove substantial prejudice. Nelson's trial had been set for February 17, 2003, and, presumably, on that date the State was prepared to call L.D.C. as a witness. However, in July 2003, some six months later, at Nelson's motion hearing seeking to withdraw his pleas, the State claimed to have lost contact with her. As to L.D.C.'s whereabouts, the State admitted that L.D.C. was only "missing" for a few months. Indeed, the State described her absence as temporary, stating that, "because of her transient lifestyle, we've lost track of her." In discussing her absence, the State was confident she could be found:

> I think at some point we probably would be able to locate her again. I'm confident that we will be able to do that and reinstate the charges against [co-defendant], but in the last few months we haven't been able to find her.

The State failed to establish that she could not eventually be located or to set forth what attempts had been made to find her. This is a far cry from the facts in *Bollig*, where the victim was only four-and-one-half-years old at the time of the offense, and Bollig had engaged in "numerous dilatory tactics" for several years. *See* 232 Wis. 2d 561, ¶ 42.

¶ 20.  At the hearing, the State also pointed to the fact that L.D.C.'s absence resulted in the dismissal of a

co-defendant's case. The trial court, seizing upon the fact that he was the judge who dismissed the co-defendant's case, stated this was a sufficient reason for denying Nelson's request:

> The Court then has to go on and make a determination after I found that there is a fair and just reason, whether the State is substantially prejudiced by the defendant withdrawing his plea at this point, and I make that finding at this point also. I handled the case of [the co-defendant] and was here and actually dismissed the case against him due to the fact that the State was not ready to proceed.

The trial court also commented that "my guess is that Mr. Nelson's choice to withdraw his pleas . . . is the fact that the State could not proceed [in the other case] and therefore if he had a trial in this case, his cases would be dismissed also."[4] The trial court erroneously exercised its discretion because the trial court failed to consider the strength of the State's case against Nelson.

¶ 21. The State has a far stronger case against Nelson than it has or had against any of the co-defendants. Indeed, one of the co-defendant's criminal complaints was based, in part, upon Nelson's confession. Here, however, DNA evidence connected Nelson to the sexual assaults and he confessed to the crimes.[5] Additionally, Will McGee, the other victim of the crimes,

---

[4] With respect to the trial court's suspicions, they do not appear to be the accurate considering the circumstances of the co-defendant's case. There is no indication that the charges would have been dismissed.

[5] The State argues that Nelson only confessed to one sexual assault. Nelson's confession to the police is not part of the record. However, Nelson admitted to the presentence writer that he had committed three separate nonconsensual sexual assaults of L.D.C.

could testify and verify that one of the attackers was called "Jamaal," or something similar. Further, while L.D.C. could corroborate the nonconsensual nature of the sexual assaults, she would have little more to offer. She certainly could not identify Nelson or any of his accomplices because all of the assailants were masked. The evidence available to the State, without the victim, was sufficient to find Nelson guilty beyond a reasonable doubt.[6]

¶ 22.  Thus, we conclude, under the facts as they existed at the time of the hearing, that the State failed to meet its burden of proof. While it may have been somewhat inconvenienced by the withdrawal of Nelson's pleas, it failed to show that it was "substantially prejudiced." Consequently, we conclude that the trial court erroneously exercised its discretion in denying Nelson the opportunity to withdraw his pleas to three counts of first-degree sexual assault.

■■■

¶ 23.  Finally, Nelson asserts that if he is successful in withdrawing some of his pleas, he is entitled to withdraw all of his guilty pleas, relying on *Robinson*, 249 Wis. 2d 553, ¶ 47. Robinson successfully argued that the two counts to which he pled no contest were multiplicitous. He originally had been charged with aggravated battery and recklessly endangering safety along with penalty enhancers. After the parties entered into a plea negotiation reducing the aggravated battery to recklessly endangering safety, Robinson pled no contest to the two counts. When Robinson sought to

---

[6] The record reflects that L.D.C. never contacted the presentence writer after phone calls were placed to L.D.C.'s daughter and sister seeking her input. The record is silent as to whether L.D.C. refused to call the agent back or never received the message.

have one count dismissed as multiplicitous, the State sought to reinstate the information containing the more serious charges. Robinson opposed this request. In such a circumstance, the *Robinson* court stated:

> We conclude that the appropriate remedy in such circumstances ordinarily is to reverse the conviction, vacate the negotiated plea agreement upon which the conviction was based, set aside the amended information, and reinstate the original charges against the accused. But the appropriate remedy depends on the totality of the circumstances. A court must examine all of the circumstances of a case to determine an appropriate remedy for that case, considering both the defendant's and State's interests.

*Id.*, ¶ 48. While reinstatement was ordered in that case, the supreme court also stated that reinstating the original charges is not always the correct remedy: "We also conclude, however, that under some circumstances this remedy might not be appropriate." *Id.*, ¶ 57. We are satisfied this is such a case.

¶ 24.  We conclude that this case more closely resembles the situation found in *State v. Krawczyk*, 2003 WI App 6, 259 Wis. 2d 843, 657 N.W.2d 77, where one of the charges to which Krawczyk pled guilty pursuant to a plea negotiation was later found to be improper. Krawczyk sought to have his other convictions overturned and to face trial on all the charges. The State opposed his motion and the trial court agreed with the State. The court explained:

> Just as a defendant should not be vindictively penalized for successfully challenging one of several convictions on appeal, neither should a defendant obtain a windfall from what is, in essence, a breach of his plea agreement with the State. That is, Krawczyk is entitled to be

relieved of the consequences flowing from the wrongful conviction, but nothing more.

*Id.*, ¶ 37 (citation omitted). Here, Nelson has not explained why the proper remedy is a reversal of all the charges, or how his legitimate interests are harmed. He bargained for a reduction of charges from seven to five. He currently remains convicted of two. The State never agreed to recommend a specific prison term, only to ask the trial court at sentencing for "substantial prison." Nelson got the benefit of his bargain.

¶ 25. For the reasons stated, we remand to the trial court to permit Nelson to withdraw his pleas to the three counts of first-degree sexual assault and to set a trial date for the charges.

*By the Court.*—Judgment and order reversed and cause remanded.

¶ 26. FINE, J. (*dissenting*). Not telling a defendant that he or she is subject to a commitment under WIS. STAT. ch. 980 does not make his or her guilty plea not "knowing and voluntary." *State v. Myers*, 199 Wis. 2d 391, 393–395, 544 N.W.2d 609, 610–611 (Ct. App. 1996). The same is true with the requirement that a defendant register as a sex offender. *State v. Bollig*, 2000 WI 6, ¶ 27, 232 Wis. 2d 561, 577, 605 N.W.2d 199, 206.

¶ 27. As the Majority points out, the State conceded in *Bollig* that under the circumstances in that case not knowing about the sex-registration requirement was "a fair and just reason for plea withdrawal." *Id.*, 2000 WI 6, ¶ 31, 232 Wis. 2d at 578, 605 N.W.2d at 206. That does not, of course, end the matter because whether the State would be prejudiced by a plea withdrawal is vested in the trial court's discretion. *Id.*, 2000 WI 6, ¶ 32, 232 Wis. 2d at 578, 605 N.W.2d at 206.

¶ 28. Unfortunately, the Majority here overrides the trial court's discretion with its own, and weighs the evidence. In my view, the trial court rationally assessed the evidence presented to it; our commission thus does not give us warrant to second-guess its determination.

¶ 29. The upshot of this sad case is that the victim of horrendous assaults will have to suffer anew (if the State can still produce her) for something, as *Bollig* teaches in the context of registration as a sex offender, that did not violate Jarmal Nelson's due-process rights. *Id.*, 2000 WI 6, ¶ 27, 232 Wis. 2d at 577, 605 N.W.2d at 206. Indeed, *Myers* teaches that the trial court here did not have any obligation to tell Nelson that he could be committed under Wis. Stat. ch. 980. *Myers*, 199 Wis. 2d at 394, 544 N.W.2d at 610. Nevertheless, despite the Majority's apparent conclusion that the evidence against Nelson is so overwhelming that the State could not possibly be prejudiced, the victim will have to endure more rounds of humiliation and torment added to what she has already suffered. Of course, this ignores prejudice *to the victim.* In my view, nothing in the law or logic either does or should compel that result. *See Morris v. Slappy*, 461 U.S. 1, 14–15 (1983) (Sparing victim the potential trauma of having to testify at a new trial is an appropriate factor to consider in deciding whether to reverse a conviction.). I respectfully dissent.