ANN WALSH BRADLEY, J.
¶ 213. (dissenting).
The majority opinion ultimately concludes that because the videotapes would no longer be admissible under Wis. Stat. § 908.08, the State would be substantially prejudiced if Lopez were allowed to withdraw her pleas. It maintains that without the videotapes the State would be left with a less compelling presentation of evidence due to A.O.'s loss of memory.
¶ 214. Its analysis, however, fails to address the argument that there was no evidence in the record supporting the circuit court's speculation or belief that A.O. suffered from memory loss. It further ignores the strong evidence against Lopez, which may still include the recordings or substantial portions of them admitted under other evidentiary rules. In essence, the majority fails to give any meaning to the word "substantial."
¶ 215. I am mindful of the appalling facts of this case. Nevertheless, I determine, as did the court of appeals, that neither the record nor the law supports a conclusion of substantial prejudice here. Accordingly, I respectfully dissent.
*88 I
¶ 216. At the outset the majority correctly states the standard for plea withdrawal: "a circuit court should 'freely allow a defendant to withdraw his plea prior to sentencing for any fair and just reasons, unless the prosecution [would] be substantially prejudiced.'" Majority op., ¶ 2 (citations omitted).
¶ 217. It acknowledges that the State has conceded that Lopez presented a fair and just reason for withdrawing her pleas. Majority op., ¶ 3. Accordingly, it announces what is the essential issue in this case: "our analysis in this case focuses on whether the circuit court erroneously exercised its discretion in concluding that the State would be substantially prejudiced if Lopez were allowed to withdraw her pleas." Id. It follows the announcement by listing the defendant's arguments. Majority op., ¶ 4. Among them is Lopez's argument that "the State failed to demonstrate that the case against Lopez would be more difficult to prove." Id.
¶ 218. The majority later characterizes this argument as "whether the State might still be able to prove guilt beyond a reasonable doubt." Majority op., ¶ 86. It determines that this is not the test for substantial prejudice and proceeds to set forth its own somewhat circuitous test for substantial prejudice. It explains that the test for substantial prejudice is "whether the State would be substantially prejudiced if Lopez were allowed to withdraw her pleas." Id.
¶ 219. In reaching its conclusion that there was substantial prejudice in this case, the majority quotes the circuit court's findings that the tapes were "compelling" and "credible," its belief that due to the passage of time there would be a "risk" that A.O. would not be able to reproduce the testimony she gave on the tapes, and *89 its "hope" that with therapy some of the things A.O. has forgotten. Majority op., ¶¶ 91-95.[1] Ultimately, the majority determines that the State would be substantially prejudiced here because "[w]ithout admitting the recordings as envisioned under § 908.08, the State was left with a completely different and less compelling presentation of its evidence." Id,., ¶ 98.
II
¶ 220. I begin by considering the purported evidence and case law that forms the basis of the majority's conclusion and examine them in light of Lopez's arguments. First, Lopez argues that the State has failed to show substantial prejudice because it offered no evidence that the victim is unable to testify or that the victim's memory has faded. Second, she contends that there is no showing of substantial prejudice because there remains significant evidence against her, including alternative grounds for the admission of significant portions of the video recordings. I address each in turn.
A.
¶ 221. Absent from the majority's analysis is any evidence of record that would support its speculative conclusion that the State would be substantially prejudiced due to A.O.'s memory loss. It asserts that she would be unable to convey the same message as the video recordings due to the passage of time and her therapy.
*90 ¶ 222. I agree with the majority that a circuit court's decision to grant or deny a plea withdrawal is entitled to deference. However, that does not mean that we simply accept the circuit court's determination. This court conducts a review which looks at whether the determination was "made and based upon the facts appearing in the record and in reliance on the appropriate or applicable law." State v. Jenkins, 2007 WI 96, ¶ 30, 303 Wis. 2d 157, 736 N.W.2d 24 (quoting State v. Canedy, 161 Wis. 2d 565, 579, 469 N.W.2d 163 (1991)); see also State v. Bollig, 2000 WI 6, ¶ 41, 232 Wis. 2d 561, 605 N.W.2d 199.
¶ 223. Here, there are no facts in the record indicating that A.O.'s memory has faded. The circuit court's belief or "hope" that A.O. has forgotten is not the same thing as a finding based on evidence that she has forgotten or her memory has faded. Rather than relying on evidence, both the circuit court and the majority rest on the circuit court's speculation, belief, and hope about A.O.'s therapy to conclude that she may have difficulty recalling details of what happened.
¶ 224. In the absence of any evidence of record, the majority relies instead on two plea withdrawal cases, Bollig and State v. Rushing, 2007 WI App 227, 305 Wis. 2d 739, 740 N.W.2d 894. I find its reliance misplaced. The majority fails to acknowledge the significant distinguishing factor in those cases. Both cases involved significantly younger victims. Bollig, 232 Wis. 2d 561, ¶¶ 43-46 (victim was four-and-a-half years old at the time of the assault, and a motion for plea withdrawal occurred two years later); Rushing, 305 Wis. 2d 739, ¶¶ 2, 7 (victim was five years old at the time of the assault and defendant moved to withdraw his plea two years later). Although it may be a reasonable inference that a four- or five-year-old victim's memory would be *91 affected by the passage of two years, that inference is much more tenuous when applied to the victim here, who was 14 years old at the time of the incidents.
¶ 225. In both cases there were facts of record in addition to the passage of time that supported a conclusion of substantial prejudice. In Rushing, the assistant district attorney entered an affidavit indicating that the victim's memory of the event had changed. 305 Wis. 2d 739, ¶ 8. In addition, the child's videotaped statement indicated that he "appeared to be very reluctant, very hard to interview, very hyperactive, very unwilling to engage in the facts and circumstances in an — any substantial way." Id., ¶ 9.
¶ 226. In Bollig, this court likewise stressed facts of record, noting that it would be improper for the circuit court to rely on "personal assumptions." 232 Wis. 2d 561, ¶ 46. Relying on "the facts of the record, as well as the recognition of the effects of protracted criminal proceedings on the victim's memory" this court agreed that there was substantial prejudice. Id.
¶ 227. Here, the majority does not point to facts of record to support the circuit court's conclusion of substantial prejudice. The absence of such evidence from the majority's discussion undermines its analysis.
¶ 228. Mere passage of time does not support the conclusion of substantial prejudice due to loss of memory. Neither do speculation, belief, and hope support such a conclusion. Rather, it must be based on evidence of record. Contrary to the majority, I would conclude that the circuit court erroneously exercised its discretion when it determined, without evidence of record, that A.O. suffered from memory loss and would be unable to present substantially the same information as provided in the video recordings.
*92 B.
¶ 229. I turn next to Lopez's second argument, that the State failed to prove that it was substantially prejudiced because there was still significant evidence against her.
¶ 230. Missing from the majority's analysis is a meaningful discussion of what constitutes substantial prejudice and our relevant precedent that would inform such a discussion.
¶ 231. The majority's analysis of this issue consists primarily of its determination that the test for substantial prejudice is not "whether the State might still be able to prove guilt beyond a reasonable doubt without admitting the audiovisual recordings," rather, "[t]he test is whether the State would be substantially prejudiced if Lopez were allowed to withdraw her pleas." Majority op., ¶ 86. However, if the State can still prove its case beyond a reasonable doubt, it is unclear how the State would be substantially prejudiced. The majority's discussion does not indicate what State interest would be prejudiced and fails to clearly define substantial prejudice. Fashioning a circuitous test (the test for substantial prejudice is whether the State was substantially prejudiced) provides little illumination on the subject.
¶ 232. An examination of State v. Nelson, 2005 WI App 113, 282 Wis. 2d 502, 701 N.W.2d 32, would assist the majority in shedding light on what constitutes substantial prejudice. In that case, the circuit court had denied the defendant's motion to withdraw his plea because it determined that the State would be prejudiced as it had lost track of the victim. Id., ¶ 6. The court of appeals, however, determined that this was error because "the trial court failed to consider the strength of the State's case against Nelson." Id., ¶ 20.
*93 ¶ 233. After noting that little case law touches upon the issue of substantial prejudice, the Nelson court relied upon a dictionary definition of "substantial." Id., ¶ 17. ("The dictionary definition of 'substantial' includes the words 'important' and 'essential.' See Webster's Third New International Dictionary 2280 (1993)"). Noting that there was DNA evidence and that the defendant had confessed to the crimes, the court determined that even without the victim's testimony the evidence would be sufficient to find the defendant guilty beyond a reasonable doubt. Id., ¶ 21. Accordingly, the court concluded that although the State "may have been somewhat inconvenienced by the withdrawal," it had failed to establish substantial prejudice. Id., ¶ 22.
¶ 234. It is difficult to reconcile the majority's decision today with Nelson. Here, Lopez admitted much of the abuse in an interview with a detective the day after A.O. was rescued from her home. Lopez also admitted the abuse in another interview shortly after entering her plea. She admitted the abuse again when she testified at Olivas' trial. In addition to these statements, there are photographs of A.O.'s injuries and detailed medical reports. Indeed, the circuit court acknowledged that "the wounds on [A.Q.]'s body alone speak to the reality of what she went through. Even if she had been killed and she had no voice left to explain what harm [Lopez] had done to her, the wounds on her body would still tell us." Further, there is no indication in the record that A.O. would be unable to reproduce her statements about the abuse.
¶ 235. As in Nelson, even absent the audiovisual recordings of A.O.'s statements, there is significant evidence against Lopez. Thus, it seems that any inconvenience or prejudice that the State may incur by not *94 being able to admit the recordings under Wis. Stat. § 908.08 does not rise to the level of substantial prejudice. By concluding otherwise, the majority ignores the fact that a circuit court must find more than mere prejudice in order to deny a motion to withdraw a plea, it must find substantial prejudice.
C
¶ 236. In furtherance of her argument that the State was not substantially prejudiced, Lopez advances that portions of the tapes could still be shown even though admissibility under Wis. Stat. § 908.08 is no longer available. Yet, the majority pays short shrift to the relevant law that would allow for the admission of the tapes.
¶ 237. Lopez argues, and both the majority and dissenting opinions in the court of appeals agree, that the visual portions of the tapes are not hearsay and thus need not fall under a hearsay exception in order to be admissible at trial. The majority specifically rejected the State's argument that it would be prejudiced by not being able to show A.O.'s physical conditions, noting that the State "does not explain why it would be precluded from displaying images of A.O.'s injuries without playing the audio portion of the recordings." State v. Lopez, No. 2011AP2733-CR, unpublished slip op. at 6 (Wis. Ct. App. Sept. 26, 2012). The dissent agreed with this analysis, stating that "A.O. turning 16 does not interfere with the State's ability at trial to use the video of the interviews to show A.O.'s injuries." Id. at 7 (Lundsten, P.J., dissenting).
¶ 238. Furthermore, Wis. Stat. § 908.08(7)[2] specifically permits the admission of audiovisual record *95 ings of children under other relevant evidentiary rules even where the hearsay exception in Wis. Stat. § 908.08(3) does not apply. "Wis. Stat. § 908.08(7) permits the admission of a child's videotaped statement under any applicable hearsay exception regardless of whether the requirements of subsections (2) and (3) have been met." State v. Snider, 2003 WI App 172, ¶ 12, 266 Wis. 2d 830, 668 N.W.2d 784.
¶ 239. Lopez suggests that one such applicable hearsay exception is the residual hearsay exception in Wis. Stat. § 908.03(24). That section permits the admission of "[a] statement not specifically covered by any of the foregoing exceptions but having comparable circumstantial guarantees of trustworthiness." Wis. Stat. § 908.03(24).
¶ 240. In Snider, the court upheld the use of the residual exception to admit an audiovisual recording of a child victim's statement that did not meet the requirements set forth in Wis. Stat. § 908.08. 266 Wis. 2d 830, ¶ 16. There, the State sought to admit the recording after the victim testified because the victim's testimony was significantly less detailed than the account she had previously given. Id., ¶ 5. The defendant objected as the taped statement was not made under oath and he had not received 10 days prior notice as required by Wis. Stat. § 908.08.
¶ 241. On appeal, the Snider court concluded that the circuit court had appropriately considered the factors enumerated in State v. Sorenson, 143 Wis. 2d 226, 245-46, 421 N.W.2d 77 (1988), and State v. Huntington, 216 Wis. 2d 671, 687-88, 575 N.W.2d 268 (1998), and *96 determined that the recording was admissible under Wis. Stat. § 908.03(24). Snider, 266 Wis. 2d 830, ¶ 19. Those factors include:
[T]he child's age, ability to communicate and familial relationship with the defendant; the person to whom the statement was made and that person's relationship to the child; the circumstances under which the statement was made, including the time elapsed since the alleged assault; the content of the statement itself, including any signs of deceit or falsity; and the existence of other corroborating evidence.
Id., ¶ 17 (citing Sorenson, 143 Wis. 2d at 245-46).
¶ 242. Here, those same factors may militate towards admission of A.O.'s recorded statements. A.O. was 14 at the time of the recordings. As the circuit court concluded, she had the age and level of development to understand the significance of the events and verbalize them. A.O. had a close personal relationship with Lopez, her mother. A.O. made the statements to a social worker soon after the events occurred. Further, the circuit court determined that A.O. clearly understood the difference between the truth and a lie and did not evince any signs of fear, guilt, anxiety, or stress. Lastly, her statements were corroborated by the medical reports of her injuries. Accordingly, based on the factors in Snider, there arguably are sufficient indicia of trustworthiness to admit the recordings under the residual exception.
¶ 243. Overall, the ability of the State to admit portions, if not the entirety, of the audiovisual recordings under relevant law other than Wis. Stat. § 908.08 undermines the majority's determination that the State would suffer substantial prejudice.
*97 III
¶ 244. In sum, the majority opinion, though lengthy, does very little to clarify the test for substantial prejudice. Its analysis ignores not only the lack of evidence in the record supporting its conclusion of substantial prejudice, but also the strong evidence remaining against Lopez, which may still include portions, if not the entirety, of the videotapes. As a result, the majority strips any meaning from the word "substantial" as used in our substantial prejudice analysis.
¶ 245. For the reasons set forth above, I determine, as did the court of appeals, that the record and the law do not support a conclusion of substantial prejudice here. Accordingly, I respectfully dissent.
¶ 246. I am authorized to state that CHIEF JUSTICE SHIRLEY S. ABRAHAMSON joins this dissent.

 The majority also suggests that Lopez intentionally waited until after receiving the presentence investigation ("PSI") report to withdraw her plea and included such "dilatory" conduct in its discussion of prejudice. Majority op., ¶¶ 81-82. This suggestion is not supported by the record as the record indicates that Lopez had not received a copy of the PSI report prior to submitting her motion to withdraw her pleas.

 Wisconsin Stat. § 908.08(7) provides in relevant part that "a court or a hearing examiner may also admit into evidence an *95 audiovisual recording of an oral statement of a child that is hearsay and is admissible under this chapter as an exception to the hearsay rule."