PER CURIAM.
¶1 Jack McKenzie Wingo, III, appeals a judgment of conviction entered after a jury found him guilty of four felonies. The only issue on appeal is whether the evidence was sufficient to sustain the convictions. We affirm.
Background
¶2 The State filed a criminal complaint alleging that Wingo, a person previously convicted of a felony, shot D.C.R. and his brother D.R. on May 7, 2015. The State charged Wingo with one count of attempted homicide by use of a dangerous weapon, two counts of first-degree reckless injury by use of a dangerous weapon, and one count of possessing a firearm while a felon.[1] The matters proceeded to trial, and a jury found Wingo guilty as charged. Because Wingo challenges the sufficiency of the evidence supporting his convictions, a review of that evidence is required.
¶3 The State presented surveillance video filmed on May 7, 2015, at approximately 10:58 p.m., outside of Ralph's Coffee House, a Milwaukee tavern at 4538 W. Lisbon Avenue. The video showed an African-American man wearing a black shirt and light-colored pants standing near a Buick in the tavern's parking lot, then shooting two other men as they exited the tavern.
¶4 Milwaukee Police Sergeant Raymond Hewitt testified that on May 7, 2015, he was on patrol in a squad car approaching West Lisbon Avenue when he heard gunshots coming from Ralph's Coffee House. A man subsequently identified as D.C.R. ran from the building and toward the officer's squad car, which Hewitt had stopped approximately forty yards away. The man was bleeding profusely from his stomach. Hewitt next saw a second man, subsequently identified as D.R., "crouched down in front of the tavern." As Hewitt exited his squad car, he saw a third man standing near a green Buick sedan. The unidentified man, who was African-American and wearing a black T-shirt, got into the green Buick and drove away.
¶5 Officer Richard Michalak testified that on May 7, 2015, he and his partner responded to a police broadcast regarding a fleeing green four-door Buick. As the officers approached the tavern with their squad car's lights and sirens activated, Michalak saw a green four-door Buick speeding on the roadway. The officers pursued the Buick, which eventually crashed into a parked car. The driver, who was wearing a black shirt, got out of the Buick after the crash and fled on foot. Michalak gave chase, but the driver escaped.
¶6 Detective Kenyatte Wooden testified that he responded to the scene of the crash. He described searching the Buick and finding, among other items, an envelope addressed to Wingo and a receipt dated May 7, 2015, from Prestige Cleaners. Additionally, Wingo stipulated that police found his fingerprints on the outside of the driver's-side front door of the Buick.
¶7 Wingo's mother testified that the green Buick damaged in the May 7, 2015 crash appeared to be her vehicle. She said that Wingo sometimes drove the car and that she did not drive it at any time on May 7, 2015.
¶8 Detective Marco Salaam testified that he contacted the manager of Prestige Cleaners. The manager provided Salaam with surveillance video showing a customer in a black T-shirt and light-colored dungarees arriving at the store in a green four-door Buick on May 7, 2015, at approximately 2:30 p.m. The manager also provided Salaam with Prestige Cleaners' copy of a receipt dated "5-7-15," showing that the customer was "Wingo, J." The tag number on the store copy of the receipt matched the tag number on the receipt found in the green Buick abandoned after it crashed later that night.
¶9 Ralph Neeley testified that he was the owner of Ralph's Coffee House and that he remembered Wingo being in the tavern on the night of the shooting. One of Neeley's employees also testified that Wingo was in Ralph's Coffee House that night, but the employee went on to testify that he did not know when Wingo left the tavern. Detective Michael Tanem then testified that he interviewed the employee shortly after the shooting, and the employee said Wingo left the tavern "approximately a minute before the shooting occurred."
¶10 D.R. testified that on May 7, 2015, someone shot him in the hip and leg as he was leaving Ralph's Coffee House. He went on to testify that he did not remember the shooting, did not remember talking to a detective afterwards, did not remember viewing a photo array of possible suspects, and did not write anything on the back of one of the photographs.
¶11 Next, Detective Michael Fasolu testified that he interviewed D.R. on May 7, 2015. According to Fasolu, D.R. said in the interview that he and his brother left Ralph's Coffee House and were in the parking lot when D.R. saw a person with whom the brothers had "exchanged words" earlier in the tavern. D.R. said the person began shooting at him and his brother. D.R. realized he was hit, and he ran until he fell.
¶12 Detective Michael Wilkerson then testified that he interviewed D.R. on May 8, 2015, and showed him a photo array. The set of six photographs of African-American men constituting the array was admitted as a trial exhibit. Wilkerson explained that he showed D.R. copies of the photographs one at a time, and D.R. picked Wingo as the person who shot D.R. outside of Ralph's Coffee House. Wilkerson further testified that D.R. wrote his name, the date, and the time of day on the back of Wingo's photograph to confirm that Wingo was the person D.R. thought was the shooter. Wilkerson identified the photograph of Wingo that D.R. selected and signed, and the photograph was also admitted as an exhibit.
¶13 Additionally, Wilkerson briefly described the observations he made when he visited D.C.R. in the hospital on May 8, 2015. The detective said that D.C.R. was bandaged following surgery to treat the injuries he sustained when he was shot in the chest and abdomen. The detective provided no other testimony about his visit with D.C.R. D.C.R. himself did not testify.
¶14 Wingo stipulated that he was a felon on May 7, 2015. Beyond his stipulations, Wingo did not present any evidence on his own behalf or call any witnesses.
¶15 Wingo appeals, challenging the sufficiency of the evidence against him. We turn to that challenge.
Discussion
¶16 Whether evidence was sufficient to support a conviction is a question of law that we review de novo. See State v. Smith , 2012 WI 91, ¶24, 342 Wis. 2d 710, 817 N.W.2d 410. Our review is "highly deferential." See State v. Rowan , 2012 WI 60, ¶5, 341 Wis. 2d 281, 814 N.W.2d 854.
[A]n appellate court may not substitute its judgment for that of the trier of fact unless the evidence, viewed most favorably to the [S]tate and the conviction, is so lacking in probative value and force that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt.
....
We give great deference to the determination of the trier of fact. We must examine the record to find facts that support upholding the jury's decision to convict.
Id. , ¶5 n.6 (citation and quotation marks omitted). Moreover, an appellate court may not overturn a verdict "[i]f any possibility exists that the trier of fact could have drawn the appropriate inferences from the evidence adduced at trial to find the requisite guilt ... even if [the court] believes that the trier of fact should not have found guilt based on the evidence before it." See State v. Poellinger , 153 Wis. 2d 493, 507, 451 N.W.2d 752 (1990).
¶17 In this case, the State had the burden to prove numerous elements before the jury could find Wingo guilty of each of the four charges he faced.[2] As Wingo expressly acknowledges, however, he disputes only whether the evidence was sufficient to prove his identity, that is, whether he was the person who possessed a firearm, attempted to kill D.C.R., and recklessly injured D.C.R. and his brother, D.R.
¶18 Wingo begins by arguing that the evidence was insufficient to prove him guilty of the attempted homicide of D.C.R. According to Wingo: "[b]ecause [D.C.R.'s] statements were not introduced at trial, there was insufficient evidence presented .... While the State argued that the circumstantial evidence is sufficient to support a conviction[,] ... without D[.C.R.]'s testimony a jury is relying merely on speculation and guess work."
¶19 Wingo is wrong. The testimony of a victim is not required to proceed to trial in a criminal case. See State v. Nelson , 2005 WI App 113, ¶21, 282 Wis. 2d 502, 701 N.W.2d 32. Indeed, the testimony of homicide victims is normally unavailable at trial, but that does not prevent homicide prosecutions. Here, D.R.'s statements directly inculpated Wingo as the person who attempted to kill D.C.R.
¶20 Moreover, while the additional evidence against Wingo was largely circumstantial, such evidence is not per se an inadequate ground for a conviction. To the contrary, "circumstantial evidence is often stronger and more satisfactory than direct evidence, and a finding of guilt may rest entirely on circumstantial evidence." See State v. Searcy , 2006 WI App 8, ¶22, 288 Wis. 2d 804, 709 N.W.2d 497. The circumstantial evidence here included: (1) testimony placing Wingo in Ralph's Coffee House until moments before the shootings in its parking lot; (2) the shooter's flight from the scene in a green Buick sedan in which police subsequently found both Wingo's fingerprints and a document with his name on it; (3) a Prestige Cleaner's receipt for "Wingo, J." with a tag number that matched the receipt found in the Buick sedan; and (4) surveillance video recorded by Prestige Cleaners several hours before the crimes showing a customer identified as "Wingo, J." arriving at the shop in a green Buick sedan and, like the shooter, wearing a black T-shirt and light-colored pants. The totality of the evidence permitted a jury to find beyond a reasonable doubt that Wingo was the person recorded on the surveillance video shooting D.C.R. on May 7, 2015.
¶21 Wingo next asserts that the evidence was insufficient to sustain his convictions for reckless injury. In support, he again points out that D.C.R. did not testify, and he emphasizes that D.R., who did testify, told the jury that he did not recall the incident and could not identify the person who shot him. Therefore, Wingo says, the jury relied on D.R.'s prior inconsistent statement identifying Wingo as the shooter. Wingo argues: "[w]hile it is not unreasonable or improper for a jury to rely upon unsworn hearsay information presented at trial ... this information was insufficient given D.R.'s lack of testimony." We reject these arguments.
¶22 First, D.C.R.'s absence from the trial does not render the evidence insufficient because, as we have seen, the testimony of a victim is not required to obtain a criminal conviction. See Nelson , 282 Wis. 2d 502, ¶21. Second, we are frankly perplexed by Wingo's references to "D.R.'s lack of testimony" and D.R.'s "unsworn hearsay." D.R. did give testimony at trial; his prior inconsistent statements and his statements identifying Wingo as the gunman therefore were not hearsay. See WIS. STAT. § 908.01(4)(a)1., 3.[3] Third, D.R.'s prior statements identifying Wingo as the person who recklessly injured D.R. and D.C.R. were not the only evidence inculpating Wingo. The additional evidence summarized above amply supported the jury's findings that Wingo was the person who recklessly injured D.C.R. and D.R.
¶23 Last, Wingo asserts that the evidence was insufficient to prove that he possessed a firearm while a felon. This is so, he argues, because D.R.'s pretrial statements identifying Wingo as the person who shot at D.C.R. and D.R. constituted "[t]he only testimony" that Wingo possessed a firearm on May 7, 2015. Wingo's argument implies that D.R.'s out-of-court statements were inherently weak evidence and necessarily inadequate to support a finding of guilt. We disagree.
¶24 A declarant's prior inconsistent statements are substantive trial evidence when the declarant is available for cross-examination. See State v. Horenberger , 119 Wis. 2d 237, 247, 349 N.W.2d 692 (1984). Here, D.R. testified and was available for cross-examination. The jury therefore could rely on the testimony of Wilkerson and Fasolu describing D.R.'s pretrial statements. See id. In those pretrial statements, D.R. identified Wingo as the person who confronted and shot at D.C.R. and D.R. on May 7, 2015. The pretrial statements alone supported a finding that Wingo possessed a firearm on May 7, 2015. When coupled with the other testimony, exhibits, and video implicating Wingo as the shooter, the evidence that he possessed a firearm on May 7, 2015, was overwhelming. For all the foregoing reasons, we affirm.
By the Court. -Judgment affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

The complaint also charged Wingo with two narcotics offenses that are not at issue in this appeal.

Before the jury could find Wingo guilty of attempted first-degree intentional homicide by use of a dangerous weapon, the State was required to prove beyond a reasonable doubt that: (1) Wingo intended to kill the victim; (2) Wingo did acts toward the commission of first-degree intentional homicide which demonstrate unequivocally, under all of the circumstances, that he intended to kill and would have killed the victim except for the intervention of another person or some other extraneous factor; and (3) Wingo committed the crime while using a dangerous weapon. See Wis JI- Criminal 1070, 990; see also Wis. Stat. §§ 940.01(1)(a) (2015-16), 939.32(3) (2015-16), 939.63 (2015-16).
Before the jury could find Wingo guilty of first-degree reckless injury by use of a dangerous weapon, the State was required to prove beyond a reasonable doubt that: (1) Wingo caused great bodily harm to the victim; (2) Wingo caused great bodily harm by criminally reckless conduct; (3) the circumstances of Wingo's conduct showed utter disregard for human life; and (4) Wingo committed the crime while using a dangerous weapon. See Wis JI- Criminal 1250, 990; see also Wis. Stat. §§ 940.23(1)(a) (2015-16), 939.63 (2015-16).
Before the jury could find Wingo guilty of possessing a firearm while a felon, the State was required to prove beyond a reasonable doubt that: (1) Wingo possessed a firearm; and (2) Wingo had been convicted of a felony before May 7, 2015. See Wis JI- Criminal 1343; see also Wis. Stat. § 941.29(2)(a) (2013-14). All subsequent references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

Wisconsin Stat. § 908.01 provides in pertinent part:
(4) Statements which are not hearsay . A statement is not hearsay if: (a) Prior statement by witness. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is: 1. Inconsistent with the declarant's testimony, or ... 3. One of identification of a person made soon after perceiving the person.