STATE of Wisconsin, Plaintiff-Respondent,

v.

Frederick W. RUSHING, Defendant-Appellant.†

Court of Appeals

*No. 2006AP3152–CR. Submitted on briefs September 4, 2007.*
*—Decided September 25, 2007.*

**2007 WI App 227**

(Also reported in 740 N.W.2d 894.)

† Petition to review denied 12/19/07.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Randall E. Paulson*, assistant state public defender of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *J.B. Van Hollen*, attorney general and *James E. Freimuth*, assistant attorney general.

Before Wedemeyer, Fine and Kessler, JJ.

¶ 1. FINE, J. Frederick W. Rushing pled guilty to first-degree sexual assault of a child. *See* Wis. Stat. § 948.02(1). He appeals the judgment of conviction and the circuit court's order denying his motion for postconviction relief. He contends that: (1) his plea colloquy was insufficient, *see* Wis. Stat. § 971.08 (prerequisites to the acceptance of a valid plea)[1]; (2) once the circuit court *sua sponte* vacated his guilty plea before sentencing, it could not reconsider and reinstate that plea; and (3) the circuit court should have granted his subsequent pre-sentencing motion to withdraw his guilty plea. We affirm.

## I.

¶ 2. The criminal complaint charged that in May of 2004, Rushing sexually assaulted his then five-year-old grandson by having the child rub baby shampoo on Rushing's penis until Rushing ejaculated. In October of

---

[1] Wisconsin Stat. § 971.08(1) requires that before a circuit court may accept a guilty or no-contest plea, the circuit court:

(a) Address the defendant personally and determine that the plea is made voluntarily with understanding of the nature of the charge and the potential punishment if convicted.

(b) Make such inquiry as satisfies it that the defendant in fact committed the crime charged.

2004, the circuit court, the Honorable Karen E. Christenson presiding, held a plea-hearing at which Rushing was scheduled to plead guilty. When, in response to the circuit court's questions, Rushing said that he understood the "elements" of the crime "to a point," the circuit court told him that he could "have a trial and the State would then prove or attempt to prove that this happened." When asked whether he wanted more time to talk to his lawyer, Rushing replied that "he and I discussed it yesterday." Rushing's defense lawyer then interjected, "[w]e did discuss it on other occasions," to which Rushing responded, "[y]es." Rushing's lawyer also reminded Rushing that they had gone over the jury instructions for the crime. Rushing agreed that they had, reiterating that he understood the elements. Rushing's lawyer then asked Rushing: "Do you understand the elements?" Rushing replied: "I understand the elements."

¶ 3. Despite Rushing's seeming unequivocal acknowledgement that he understood the elements of the crime, Rushing persisted in muddying the waters. Thus, when the circuit court further explained that before it could accept Rushing's guilty plea, it would have to be satisfied that Rushing understood "what the State would have to prove in order to prove that you committed this crime," Rushing replied that although he understood the crime's elements, there were "extenuating circumstances." The circuit court then asked flatly: "My question to you right now is, do you understand the elements of this crime? That's what the State would have to prove in order to prove that you did this. And that's either a yes or no, sir." Rushing replied: "I guess I'll have to go with yes, ma'am." When Rushing then said, "Well, I guess I'm going to have to plead guilty," the circuit court patiently explained: "Well, you don't have to. You can plead not

guilty and make the State prove it." After some discussion with his lawyer, Rushing agreed to plead guilty, telling the circuit court: "I'm guilty, Your Honor."

¶ 4. The circuit court then established that Rushing had reviewed the guilty-plea-and-waiver-of-rights form with his lawyer, and had signed it, understanding it and the constitutional rights he was giving up by pleading guilty. *See State v. Moederndorfer*, 141 Wis. 2d 823, 827, 416 N.W.2d 627, 629 (Ct. App. 1987) (circuit court may refer to a signed plea questionnaire and waiver-of-rights form to establish defendant understands the elements of the crime to which he or she is pleading guilty). The circuit court further explained:

> Among the rights that you are giving up, sir, is your right to have a jury trial where 12 people listen to all of the evidence and they all have to agree that the State proved every element of this crime beyond a reasonable doubt before you can be found guilty.

Rushing replied that he understood. He also said that no one threatened him to get him to plead guilty. As required, the circuit court warned him that despite the State's recommendation that the circuit court impose and stay a bifurcated sentence of six years of initial confinement and six years of extended supervision, and place him on probation for ten years, he could be sentenced to the statutory maximum, which the circuit court had previously told Rushing was "sixty years in prison." Rushing said that he understood.

¶ 5. To establish a factual basis for Rushing's plea, the circuit court asked:

> **THE COURT:** Did you go over the criminal complaint with your lawyer?
>
> **THE DEFENDANT:** Yes, ma'am.

**THE COURT:** Did you understand everything in the complaint?

**THE DEFENDANT:** Yes, ma'am.

**THE COURT:** And is that information in the complaint correct?

**THE DEFENDANT:** The information in the complaint is correct.

After telling Rushing of the other consequences of a guilty plea, and establishing that Rushing had adequate time to discuss the case with his lawyer and was satisfied with his lawyer's representation, the circuit court asked whether Rushing was "pleading guilty because you are guilty?"

**THE DEFENDANT:** I'm guilty up to a point, ma'am.

**THE COURT:** Mr. Rushing, there — you either are guilty or you are not guilty. If you are not guilty, if you have any doubts in your mind whether you're guilty, then I encourage you to have a trial and have the State prove this. I cannot tell whether the equivocations are part of your style or whether there is something about this offense that is troubling you.

Rushing's lawyer then talked to his client, and told the circuit court, "my client has just indicated to me that he's not guilty." The circuit court then said that it would "set this for trial." Rushing and his lawyer conferred again and the lawyer told the circuit court: "My client's now indicated that he has a different answer to the last question. Would you repeat it for him?" The circuit court did:

**THE COURT:** Mr. Rushing, —

**THE DEFENDANT:** Yes.

**THE COURT:** — the question is, are you pleading guilty because you are guilty?

**THE DEFENDANT:** Yes, ma'am.

In response to the circuit court's questions, Rushing's lawyer said that he was "satisfied that [Rushing] understands the elements and how his conduct meets them." The lawyer also attested that he had reviewed with Rushing any possible defenses Rushing might have, that he was satisfied that Rushing understood all of this, and that in his view Rushing's guilty plea was knowing and voluntary. The circuit court then accepted Rushing's plea:

**THE COURT:** All right. I approve the waiver, find that Mr. Rushing is entering his plea freely, voluntarily, intelligently, and with full understanding of the nature of the charge, the maximum possible penalties, and the rights given up by pleading guilty.

I accept your plea. There is a factual basis for this plea.

Based on your plea of guilty, I find you guilty of first degree sexual assault of a child as charged in the complaint, and I order a judgment of conviction.

The circuit court ordered a presentence-investigation report and set the case for sentencing.

¶ 6. On the sentencing date, the circuit court noted that Rushing denied his guilt to the presentence investigator, and *sua sponte* vacated the guilty plea, which, as we have seen, it had already accepted at the earlier hearing. The State did not object, and the case was set for trial.

¶ 7. Some six months later, the State asked the circuit court to reconsider its *sua sponte* vacatur of Rushing's guilty plea. Rushing, conceding "that the court followed improper procedure in initially withdrawing [*sic* — should be vacating] the plea," filed a motion seeking to withdraw his guilty plea. In July of 2005, the circuit court granted the State's motion to reconsider and vacated its *sua sponte* vacatur of Rushing's guilty plea. The case then was transferred to the Honorable Mel Flanagan pursuant to Milwaukee County's rule of judicial rotation.

¶ 8. In preparation for the hearing on Rushing's motion to withdraw his now-reinstated guilty plea, the State filed an affidavit by the assigned assistant district attorney in support of the State's contention that permitting Rushing to withdraw his guilty plea would substantially prejudice the State. In that affidavit, the prosecutor averred that she met with the victim on September 23, 2005, who was then seven years old. Contrary to his earlier statements accusing Rushing of having the boy rub shampoo on Rushing's penis, the child now said that Rushing "rubbed my thing with powder." The child also now denied that Rushing had ever had him touch Rushing: "He indicated that he never put lotion on [Rushing], and never touched [Rushing]'s penis."

¶ 9. In its decision denying Rushing's motion to withdraw his guilty plea, the circuit court determined that although it believed that Rushing had satisfied his burden of establishing a fair and just reason to withdraw his guilty plea, the State would be substantially prejudiced if that happened. The circuit court said that it watched the child's videotaped testimony, *see* Wis. Stat. Rule 908.08, which, as the circuit court recognized, would not relieve the child of having to appear in

court for cross-examination. *See* Rule 908.08(5). The circuit court noted that the "videotape is reflective of a [*sic*] extremely difficult child," who "appeared to be very reluctant, very hard to interview, very hyperactive, very unwilling to engage in the facts and circumstances in an — any substantial way." The circuit court continued:

> Although he did provide information [in the video-tape], it was difficult for the interviewer to get any information from him.
>
> That's partly because of his age, I'm sure. He was five years old at the time, and now he's seven.
>
> We're now more than a year and a half away from the actual incident, and according to the affidavit provided by the State, his memory has clearly been impaired, and that's easy to understand, when one sees the videotape.
>
> Now, we have — It appears from reviewing that videotape that clearly there would be substantial prejudice to the State . . . .

Determining that the State had shown "that forcing this child to testify would not only be difficult, but could, perhaps, be harmful to the child," the circuit court explained:

> The mother indicates that the child is very reluctant to — to discuss these issues.
>
> He continues to be very upset and is unwilling to be in the presence [of] or see the defendant.
>
> So there appears to be some substantial reluctance on his part that could cause difficulty to him.
>
> Now, I think the State has met its burden of showing there is substantial prejudice to the State . . . .

747

Accordingly, the circuit court set the matter for sentencing.

## II.

¶ 10. As we have seen, Rushing argues that his plea colloquy was insufficient, that the circuit court should not have reconsidered its decision to *sua sponte* vacate Rushing's guilty plea, and that the circuit court should have granted his motion to withdraw his guilty plea. We assess each of these contentions in turn.

A. *Sufficiency of Rushing's guilty plea.*

¶ 11. In accepting Rushing's guilty plea, the circuit court was dealing with a defendant who, although he acknowledged that the accusations set out in the complaint were "correct," at times skirted saying flatly whether he was guilty and trying to wiggle out of directly either accepting or denying responsibility for the horrific thing he was charged with doing to his then five-year-old *grandson.* Significantly, Rushing does not point to anything in the circuit court's plea colloquy with him that violated Wisconsin's rules governing the valid acceptance of a guilty plea. Rather, he contends that a confluence of events—his being held in jail in lieu of a $10,000 bail despite his apparently severe "diabetes and other . . . health problems," which were a serious kidney dysfunction and a recently amputated toe, all of which the circuit court was aware, and that following the entry of his guilty plea he was released on a personal-recognizance bond—somehow made the plea vulnerable to a plea-withdrawal motion, which, he speculates, Rushing's trial lawyer was on the cusp of making when the circuit court decided to *sua sponte*

vacate Rushing's guilty plea. Rushing, however, ignores the circuit court's rationale for *sua sponte* vacating his guilty plea—it did not vacate the plea because it saw any flaw in its careful, patient, and solicitous plea hearing colloquy, but, rather, because Rushing told the presentence investigator that he was innocent. A claim of innocence, of course, is not sufficient as a stand-alone reason to permit a plea withdrawal even before sentencing. *State v. Harvey*, 2006 WI App 26, ¶ 23, 289 Wis. 2d 222, 239, 710 N.W.2d 482, 490 ("An assertion of innocence, while important, is not dispositive."). The plea colloquy was more than sufficient.

B. *The circuit court's sua sponte vacatur of Rushing's guilty plea, and its power to reconsider.*

¶ 12. As the circuit court recognized after the State brought its motion for reconsideration, circuit courts in Wisconsin may not, absent circumstances not present here, *sua sponte* vacate guilty pleas validly accepted. *State v. Comstock*, 168 Wis. 2d 915, 921–922, 953, 485 N.W.2d 354, 356, 369–370 (1992) ("[W]e exercise our superintending authority, and direct each circuit court to refrain from *sua sponte* vacating a guilty or no contest plea after the circuit court has validly accepted the plea by assuring itself of the voluntariness of the plea and the factual basis for the charges unless the circuit court finds that there was fraud in procuring the plea or that a party intentionally withheld from the circuit court material information which would have induced the circuit court not to accept the plea.") (footnote omitted). Although Rushing argues that Comstock is distinguishable because it involved a plea bargain, the breadth of the supreme court's pronouncement was not so limited. *Cf. Malone v. Fons*, 217 Wis. 2d

746, 754, 580 N.W.2d 697, 701 (Ct. App. 1998) ("When an appellate court intentionally takes up, discusses and decides a question germane to a controversy, such a decision is not a *dictum* but is a judicial act of the court which it will thereafter recognize as a binding decision.") (citation, internal quotation marks, and brackets omitted). Indeed, Comstock recognized that circuit courts have authority to reject proffered pleas *not yet accepted* in order to ensure that the public interest is served by a proposed plea bargain. *Comstock,* 168 Wis. 2d at 927–928 n.11, 485 N.W.2d at 358 n.11 ("A circuit court has the power to accept or reject a plea agreement reducing or amending charges; it should consider the public interest in making its decision about the plea agreement and should make a complete record of the plea agreement. The court must personally advise the defendant that the agreement is in no way binding on the court.").[2] The crux of Comstock is that circuit courts may not *sua sponte* vacate fully and fairly entered and accepted pleas.

■

¶ 13. Although Rushing objects to the circuit court's reconsideration of its *sua sponte* vacatur of Rushing's guilty plea, it is clear that circuit courts always have the power to reconsider non-final orders. *State v. Williams,* 2005 WI App 221, ¶ 17, 287 Wis. 2d 748, 755, 706 N.W.2d 355, 358–359 (circuit court has the

---

[2] As we have seen, Rushing's case *was* plea bargained—the State agreed to ask the circuit court to "impose and stay a bifurcated sentence consisting of six years of initial confinement, six years of extended supervision, placing Mr. Rushing on probation for a period of ten years" with conditions the State specified. As we have also seen, the circuit court told Rushing that it was not bound by the State's plea-bargained recommendation.

inherent authority to reconsider any of its non-final rulings prior to entry of the final order or judgment in the case). Rushing does not contend that the circuit court's *sua sponte* order vacating his guilty plea was a final order.

¶ 14. Rushing's further contention that the State was judicially estopped from seeking to have the circuit court comply with the supreme court's direction in *Comstock* is also without merit. *See State v. Petty*, 201 Wis. 2d 337, 347, 548 N.W.2d 817, 820 (1996) (Judicial estoppel "precludes a party from asserting a position in a legal proceeding and then subsequently asserting an inconsistent position."). The State never asked the circuit court to *sua sponte* vacate Rushing's guilty plea; it merely acquiesced in that decision until it filed its motion for reconsideration. And, contrary to Rushing's contention, given the passage of time, the State's submission that the child could no longer endure the rigors of a trial was not inconsistent with its earlier view that the case could go ahead with the child subject to cross-examination. Other than his obvious unhappiness at being locked into his guilty plea, his argument that the State waived its right to object is without merit because he has not shown that he suffered any *unfair* prejudice in the sense that any of his rights were truncated.

C. *Plea withdrawal on Rushing's motion.*

¶ 15. After the circuit court reinstated Rushing's vacated plea, Rushing moved to withdraw that plea. As we have seen, the circuit court determined that the State would be substantially prejudiced.

¶ 16. A defendant seeking to withdraw a guilty plea before imposition of sentence must establish a fair

and just reason *and also* "must rebut evidence of substantial prejudice to the State." *State v. Jenkins*, 2007 WI 96, ¶ 43, 303 Wis. 2d 157, 182, 736 N.W.2d 24, 36. A decision to grant or deny a motion to withdraw a plea is within the circuit court's discretion. *Id.*, 2007 WI 96, ¶ 30, 303 Wis. 2d at 176, 736 N.W.2d at 33. Here, the State presented extensive evidence of the substantial prejudice it would suffer if Rushing were permitted to withdraw his guilty plea. Other than rhetoric, Rushing has not even come close to either "rebut[ting]" that evidence, which the circuit court summarized, or establishing that the circuit court erroneously exercised its discretion in denying his motion.

*By the Court.*—Judgment and order affirmed.