COURT OF APPEALS
DECISION
DATED AND FILED

May 18, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP2024-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2016CF879

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

DOUGLAS J. RICHER,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Eau Claire County: SHAUGHNESSY MURPHY and SARAH MAE HARLESS, Judges. *Reversed and cause remanded with directions*.

Before Stark, P.J., Hruz and Seidl, JJ.

¶1 HRUZ, J. Douglas Richer appeals a judgment of conviction for possession with intent to deliver greater than fifty grams of methamphetamine as a party to a crime, with various penalty enhancers. Richer had reached a plea

agreement with the State and entered a no-contest plea, which the circuit court accepted following a proper colloquy. We agree with Richer that the court placed him twice in jeopardy for the same offense, contrary to Richer's state and federal double jeopardy rights, when it sua sponte vacated that plea based on comments Richer made during his sentencing allocution.

¶2 Richer subsequently reached a second plea agreement with the State, which resulted in the judgment of conviction from which Richer now appeals. However, Richer received a materially less favorable plea bargain in the second prosecution, particularly regarding the State's sentencing recommendation. We reverse the judgment of conviction and the order denying Richer's postconviction motion. We remand with directions that the circuit court reinstate Richer's original plea and enforce the initial plea agreement pursuant to which that plea was entered. As part of those proceedings, Richer is entitled to resentencing with the benefit of the sentencing recommendation the State agreed to make under the initial plea agreement. The court may conduct such other proceedings as are necessary on remand, consistent with this opinion.

**BACKGROUND**

¶3 Richer was charged in the present case with the possession offense and maintaining a drug trafficking place, both as a party to a crime and with various penalty enhancers. His wife was charged as a co-defendant with the same offenses, minus the penalty enhancers.[1] In another case, Dunn County case

---

[1] The appellate record reflects that Richer married his wife two weeks before the incident that led to the present charges; hence, certain documents refer to her as his girlfriend. The charges against Richer's wife were eventually severed and filed as Eau Claire County case No. 2016CF878.

No. 2016CF230, Richer was charged with possessing between three and ten grams of methamphetamine, with penalty enhancers.[2]

¶4      In the Dunn County case, Richer filed a motion to suppress evidence, which was denied.  He also filed a motion to compel discovery, contending that the prosecutor had intentionally delayed turning over items to defense counsel.  According to Richer, both motions bore on the legality of the traffic stop that led to Richer's arrest and the discovery of methamphetamine in his possession.  The traffic stop then formed the basis for the search warrant of his residence that led to the charges in Eau Claire County.

¶5      Richer ultimately reached a plea agreement with the State resolving his Eau Claire and Dunn County charges.  Richer agreed to plead no contest to the possession with intent to deliver offense as charged in this case.  The remaining charges in Eau Claire and Dunn Counties were to be dismissed and read in.  The parties would jointly recommend a sixteen-year prison sentence, consisting of six years' initial confinement and ten years' extended supervision, consecutive to Richer's then-existing sentences.  Additionally, the State promised to dismiss with prejudice the charges against Richer's wife.

¶6      The circuit court then engaged Richer in a plea colloquy.[3]  The court advised Richer of the potential punishment for the crime of conviction and that it

---

[2] The Consolidated Court Automation Programs (CCAP) system, the contents of which may be subject to judicial notice under *Kirk v. Credit Acceptance Corp.*, 2013 WI App 32, ¶5 n.1, 346 Wis. 2d 635, 829 N.W.2d 522, does not show any results for Dunn County case No. 2016CF230.  There is a brief reference to that case number in the record of another case against Richer, Dunn County case No. 2016CF187.  We accept for purposes of this appeal Richer's representations regarding Dunn County case No. 2016CF230.

[3] The Honorable Shaughnessy Murphy presided over the proceedings that resulted in the judgment of conviction in this matter.

was not bound by the plea agreement's joint sentencing recommendation. Richer briefly consulted privately with his attorney during that exchange. The court then confirmed Richer's age and education, that he could read and speak English, that he had not consumed alcohol or drugs recently, and that he was not suffering from any mental illness or disorder.

¶7    The circuit court asked Richer whether he had an opportunity to discuss with his attorney the elements of the crime of possession of methamphetamine with intent to deliver. Richer paused to speak with his counsel, then he advised the court he needed clarification about the "intent to deliver" aspect of the charge. Specifically, Richer noted that he had not been charged with a sale but, rather, that he had been told the intent to deliver could be inferred from the large quantity of drugs discovered on his property. Upon being questioned by his attorney on the record, Richer stated that he understood the elements of the offense, but he then added, "I'm told that if I'm in possession of it, that … automatically … the law assumes it is intent to sell because of … the amount, that I don't have an argument to dispute that."

¶8    Richer's attorney then asked Richer whether he understood the elements of the offense and wanted to move forward with the plea agreement. Richer responded, "I'm willing to enter a plea, but I'm just saying—I'm told that this is a matter of—we've discussed this." Richer then stated, again, that he had been told that "just because something is found in a large amount … the State can charge whatever they want, and they … make an assumption that you're intending

4

to sell something and enhance the penalties." Richer's attorney requested to have an off-the-record discussion with his client.[4]

¶9      When the hearing resumed, Richer stated he understood the elements of the offense. At the State's request, the circuit court conducted a detailed inquiry regarding each of the offense's elements. Richer confirmed that he understood each of the elements, and he admitted to his prior convictions for purposes of the penalty enhancers. The court also asked Richer whether he believed the facts set forth in the criminal complaint and the Information supported a guilty or no-contest plea. After conferring with his attorney, Richer agreed that the factual basis for his plea was that "they found drugs at my residence."

¶10     When asked by the circuit court if anyone had made any threats or promises to convince him to enter his plea, Richer again paused to confer with counsel. He then answered, "Nothing other than the elements and the plea agreement." The court then confirmed that Richer understood the effect a conviction would have on his civil rights and immigration status. It also obtained Richer's acknowledgment as to each of the constitutional rights he was giving up by entering a plea. Richer entered a plea of no contest, which the court expressly accepted, stating:

> The court will accept your no contest plea and find you guilty, and I'll find that that your plea is freely, voluntarily, and intelligently made with a full understanding of the nature of the charges, the maximum penalties, and the rights you're giving up here today by entering into this

---

[4] The prosecutor subsequently clarified, in Richer's presence, that there is "no legal presumption that the weight [of the drugs] by itself would be possession with intent to deliver."

plea, and the court will again accept your plea and find that there's a factual basis for the plea.

¶11 The parties immediately proceeded to sentencing, but Richer's motivations for pleading to the charge remained a focus of their sentencing arguments. The prosecutor endorsed the joint recommendation and stated that the recommended sixteen-year sentence was warranted given the large quantity of methamphetamine found in Richer's residence and Richer's past criminal history. He added, however, that he did not want Richer "to enter his plea if he's not comfortable with this agreement."

¶12 After discussing the sentencing factors applicable to Richer, defense counsel responded to the prosecutor's concerns regarding Richer's acceptance of the plea agreement:

> [P]robably the clinching part of the deal was that as part of taking this deal that the State would move to dismiss with prejudice any claims against Ms. Peterson, his wife. That is something that was absolutely—he wanted to make sure that the court knew that that was a big reason why he's choosing to take this today. We don't want the court to not accept this today. We are here, Mr. Richer has entered his no contest plea, we're asking the court to move forward with all of the information it has before it and pronounce sentence as … both parties have stated on the record recommending this joint recommendation to the court.

Defense counsel again endorsed the joint sentencing recommendation.

¶13 Richer began his allocution by emphasizing that he did not "want to say anything … that's going to jeopardize the court trying to withdraw—not accept my plea. I want to make that real clear." He continued:

> And if I come off that I'm saying some of the things I have to say [it might] seem like that, but I actually … speak for one reason and one reason only is because my wife is— … I'm going to be very frank, Your Honor—my wife's lawyer

> has basically done nothing for her to—she hasn't attempted to preserve any of the evidence that she knew about over a year ago. It wasn't till almost a month ago that she finally filed a discovery motion after I chastised her about not doing anything for her. She didn't have any representation or any ability to defend herself. And knowing that and knowing what I know about the circumstances surrounding this and her having no involvement or knowledge … about this, I … felt it was my responsibility to protect her.

Richer continued by saying that he did not want the State "taking this out on her … just because of her circumstances of not having money for a lawyer and having no proper representation."

¶14 Richer also spoke about the charges against him during his allocution. He stated that he had been incarcerated for eight months previously, and during that period two individuals (who apparently had also been charged with possession offenses related to this case) brought the drugs eventually found during the execution of the search warrant into his home. Richer stated he had "begged" his lawyers in the cases to allow him to take a lie detector test to prove "where the drugs came from that they found at our residence," but he was told that such evidence would not be admissible. Richer expressed dissatisfaction with the first attorney who represented him in the Eau Claire County case, and he asserted that prosecutors in Dunn County had intentionally withheld evidence showing the search warrant had been obtained by fraud.

¶15 At that point, the circuit court interrupted to say it had questions, and Richer had an off-the-record conversation with his attorney. The court again recited the elements of the possession with intent to deliver offense, asking Richer to confirm after each element that he understood it. Each time, Richer responded affirmatively. Richer again confirmed that he understood, pursuant to his no-contest plea, that he was admitting that the State could prove each of those

elements beyond a reasonable doubt. When Richer resumed his allocution, he continued criticizing his prior attorney, and he stated that "every attempt that I tried … to obtain disclosure and evidence in this matter" had been thwarted.

¶16 The prosecutor then interjected, "Judge, at this point, I don't believe that we can have this plea go through today." The prosecutor argued Richer's allegations regarding ineffective assistance of counsel and a **Brady**[5] violation deserved a hearing to be developed "in an appropriate and highly factually supported way." Richer's counsel responded that Richer "absolutely wants the court to accept this plea today" and emphasized that Richer understood he was giving up his motions on these issues so that he could accept the plea deal and protect his wife. Defense counsel acknowledged that Richer was "perhaps going a little bit too far … trying to explain the reasons why he took the plea," but he noted that the circuit court had already accepted Richer's plea and should continue the sentencing hearing.

¶17 The circuit court then sua sponte withdrew Richer's plea over his protestations during the following exchange, immediately after which it concluded the hearing:

> THE COURT: While we engaged in the colloquy, I wasn't confident initially that Mr. Richer wanted to take this plea. We went over each element thoroughly, we went over each constitutional right thoroughly, and each response to the question was either cute or tried to be nuanced, and that's why I went over it multiple times and until the point where I was satisfied. Mr. Richer, in his allocution, is making it abundantly clear to me that … he doesn't think that the facts of this case that have been stipulated to support his plea.

---

[5] *See **Brady v. Maryland**, 373 U.S. 83 (1963).

[RICHER]: No, that's not true, sir. And that's not my intention.

[RICHER'S ATTORNEY]: Let him talk.

THE COURT: And … I am very concerned. I've tried to rehabilitate you in this portion by going through the elements again—

[RICHER]: I understand that.

THE COURT: —and I thought that was a good enough warning, but you actually took it further; and so at this point, I'm not willing and ready or able to move to sentencing and I will not accept the plea. I will withdraw your plea on your behalf and ask that this matter be set for the appropriate hearing at the appropriate time, but right now is not the time to have that debate. [The prosecutor] is correct. These are grave, grave, grave allegations that have been leveled on the court. And, Mr. Richer, you have the right to have those heard, and the … time to have those heard isn't just, as you alluded to, on appeal. … The purpose of … a sentencing hearing of this gravity is to make sure that you are clear-minded and entering into what you know you're entering into, and I am not convinced that you are, so I will ask that [the parties] … schedule time … for these hearings, and this matter is adjourned.

[RICHER]: Your Honor, can I make a comment?

THE COURT: No.

¶18 Richer filed a motion for reconsideration, asserting that the circuit court had misconstrued his statements at the plea hearing, that the court had erred by withdrawing the plea on his behalf, and that "he was 100% in agreement with voluntarily waiving his constitutional rights and entering his plea, which was the result of negotiated plea agreement" with the State. At the beginning of a subsequent status conference, Richer requested that the court take up his motion for reconsideration. The court declined to rule on the motion based upon the prosecutor's assertion that there had been no plea to withdraw because the court had not accepted the plea in the first instance.

9

¶19 At that same status conference, the prosecutor notified the circuit court that there had been "new developments" in the case. Specifically, the prosecutor stated the previous plea offer had been "taken off the table," "significant additional trial preparation" had taken place, and he no longer believed the joint recommendation of the prior plea agreement was appropriate. The prosecutor stated he had offered Richer a new plea agreement whereby Richer would plead guilty to the same possession with intent to deliver offense. As before, the remaining charges in Eau Claire and Dunn Counties would be dismissed and read in. However, unlike the prior plea agreement, the charges against Richer's wife would be dismissed without prejudice, and the parties would order a presentence investigation and were free to argue at sentencing.

¶20 Richer accepted the proposed, new plea agreement at the status conference, at which time the circuit court conducted another plea colloquy. The court accepted Richer's no-contest plea to the possession with intent to deliver offense and adjudged him guilty. At sentencing, the State now recommended a thirty-year prison sentence consisting of fifteen years each of initial confinement and extended supervision. The court accepted the State's recommendation and sentenced Richer accordingly.

¶21 Richer obtained postconviction counsel and filed a postconviction motion requesting that the circuit court vacate his sentence, reinstate the original plea bargain, and set the matter for a new sentencing hearing.[6] The postconviction motion primarily relied on *State v. Comstock*, 168 Wis. 2d 915, 485 N.W.2d 354

---

[6] The Honorable Sarah Mae Harless presided over the proceedings involving Richer's postconviction motion.

(1992), in which our supreme court held that it is error for a circuit court to sua sponte vacate a guilty or no-contest plea after it has been validly accepted unless the court finds that there was fraud or the intentional withholding of material information affecting the plea. *Id.* at 921-22. Richer also alleged that his prior attorney was unaware of *Comstock* and therefore was constitutionally ineffective.[7]

¶22 The circuit court denied the postconviction motion, reasoning that during his allocution at the first sentencing hearing, Richer had effectively denied one or more elements of the crime of possession with intent to deliver. The court therefore determined that Richer had "withheld material information which would have induced the court not to accept the plea." Richer now appeals the judgment of conviction and the order denying his motion for postconviction relief.

## DISCUSSION

¶23 Richer asserts that the circuit court's sua sponte decision to vacate his initial plea violated his right to be free from double jeopardy under the federal and state constitutions. *See* U.S. CONST. art. V; WIS. CONST. art. I, § 8(1).[8] Among the protections afforded by the Double Jeopardy Clause is the right to be free from a second prosecution for the same offense after conviction. *State v. Berry*, 2016 WI App 40, ¶8, 369 Wis. 2d 211, 879 N.W.2d 802. "The bar to

---

[7] Richer also argued that his second plea did not operate as a waiver of his claim under *State v. Comstock*, 168 Wis. 2d 915, 485 N.W.2d 354 (1992). The State has explicitly stated that it is not arguing waiver.

[8] These provisions are generally regarded as identical in scope and purpose, and we therefore accept decisions by the United States Supreme Court as controlling interpretations of the double jeopardy provisions in both constitutions. *State v. Kelty*, 2006 WI 101, ¶15, 294 Wis. 2d 62, 716 N.W.2d 886.

retrial after conviction … ensures that the state will not make repeated attempts to convict an individual, thereby exposing the accused to continued embarrassment, anxiety, and expense, while increasing the risk of an erroneous conviction or an impermissibly enhanced sentence." *Comstock*, 168 Wis. 2d at 937. Whether a defendant's constitutional right to be free from double jeopardy has been violated is a question of law that we review de novo. *Berry*, 369 Wis. 2d 211, ¶9.

¶24 We agree with Richer that *Comstock* dictates the outcome of this appeal. In *Comstock*, our supreme court discussed when the prohibition against double jeopardy is triggered in the context of a guilty or no-contest plea. *Comstock*, 168 Wis. 2d at 937-38. The court noted the well-established rule that "jeopardy attaches when a circuit court accepts an accused's plea of guilty" or no contest. *Id.* (collecting cases). The acceptance of a guilty or no-contest plea exposes the accused to the risk of a determination of guilt and the entry of a judgment of conviction, and it therefore sufficiently places the defendant in jeopardy for purposes of the Double Jeopardy Clause. *Id.* at 938.

¶25 The State argues that *Comstock*, as a rule of constitutional law, is limited to its facts, and therefore jeopardy did not attach when the circuit court initially accepted Richer's no-contest plea. The relevant facts in *Comstock* were that the defendant was charged with four counts of second-degree sexual assault, and he reached a plea agreement with the State whereby: he would plead guilty to two amended counts of fourth-degree sexual assault, with the remaining charges dismissed; other potential charges involving the victim and her family would not be brought; and the State would recommend probation with conditional jail time. *Id.* at 926-27. The circuit court in *Comstock* engaged the defendant in a plea colloquy, dismissed the agreed-to charges, allowed the amendment of the remaining charges, and then accepted the defendant's pleas to the charges as

12

amended. *Id.* at 928-29. At sentencing, however, the court expressed concerns about how the case had been handled, and, after further briefing, it vacated the defendant's pleas on its own motion. *Id.* at 932-34.

¶26 The State argues that the present case is distinguishable because the circuit court vacated Richer's plea at the same hearing at which it was entered, albeit during the sentencing phase. The State relies on a federal decision expressly rejected by the *Comstock* court as to the time when jeopardy attaches: *United States v. Santiago Soto*, 825 F.2d 616 (1st Cir. 1987). *Comstock* described *Santiago Soto* as holding that the accused was not placed in jeopardy "when the circuit court accepted the guilty plea and rejected it in the same proceeding on grounds that the accused may not be guilty." *Comstock*, 168 Wis. 2d at 943. The State contends that this situation is precisely what occurred here, insomuch as Richer effectively denied that he committed the offense, and therefore the court was warranted in vacating his plea.

¶27 In making this argument, the State runs headlong into our supreme court's exercise of superintending authority in *Comstock* to prevent the type of situation that occurred here. Our supreme court in *Comstock* acknowledged both the defense's and prosecution's request to establish a bright-line rule, and it "direct[ed] each circuit court to refrain from sua sponte vacating a guilty or no contest plea after the circuit court validly accepted the plea by assuring itself of the voluntariness of the plea and the factual basis for the charges." *Id.* at 922 (italics omitted). Regardless of whether this rule is of constitutional origin, the rule applies here because it is undisputed that, prior to Richer's allocution, there was a valid acceptance of the plea. Namely, the circuit court conducted a proper and thorough plea colloquy, satisfied itself that a factual basis for Richer's plea

existed, and then expressly ascertained that the plea was made knowingly, intelligently and voluntarily.

¶28    The other problem with the State's argument is that it fails to respond in any fashion to other relevant case law cited by Richer. Specifically, *State v. Terrill*, 2001 WI App 70, 242 Wis. 2d 415, 625 N.W.2d 353, rejected a similar argument to the one the State makes here about the vacatur being permissible because it occurred at the same hearing. In *Terrill*, we determined the circuit court violated the defendant's due process rights when it reconsidered at sentencing its acceptance of a plea agreement, which led it to immediately convict a defendant of a felony under circumstances where the court was supposed to defer accepting the defendant's guilty plea. *Id.*, ¶¶3-5, 24-25. The circuit court in *Terrill* had justified its action by attempting to distinguish *Comstock* and *State v. Barney*, 213 Wis. 2d 344, 570 N.W.2d 731 (Ct. App. 1997), on the basis that it had not yet entered judgment at the time it reconsidered accepting the plea agreement. *Terrill*, 242 Wis. 2d 415, ¶23. Importantly, at least for our present purposes, we held that the timing of the court's hindsight rejection of the plea agreement was "legally irrelevant," regardless of "[w]hether that action took place minutes, hours, or days after Terrill entered his pleas." *Id.*, ¶¶24-25. Despite Richer raising *Terrill*—and the preceding passage in particular—in his initial brief, the State omitted any response to it in its brief.

¶29    Nonetheless, the State argues that Richer

> ignores the circuit court's heavy obligation under WIS. STAT. § 971.08 [relating to a circuit court's duties prior to accepting a plea of guilty or no contest] and *State v. Bangert*, 131 Wis. 2d 246, 261-62, 389 N.W.2d 12 (1986), to ensure that a defendant's plea is constitutionally valid in that it is knowing, intelligent, and voluntary and has a factual basis.

14

To the contrary, it is the State that denies the importance of these duties and seeks to undo a plea that was duly accepted following the circuit court's scrupulous adherence to them. Indeed, the court here took great efforts before affirmatively deciding to accept Richer's plea in order to satisfy itself that there was a factual basis for the plea, that Richer understood the elements of the offense and the punishment to which he was subjecting himself, and that he had entered the plea knowingly, intelligently and voluntarily.

¶30 In any event, consistent with the analysis in *Santiago Soto* and other federal cases, our supreme court in *Comstock* recognized two exceptions to the general prohibition on a circuit court sua sponte vacating a validly accepted plea. A circuit court may not do so "unless [it] … finds that there was fraud in procuring the plea or that a party intentionally withheld from the circuit court material information which would have induced the circuit court not to accept the plea." *Comstock*, 168 Wis. 2d at 953. Like the State, we perceive the *Comstock* court to have incorporated the holdings of federal cases like *Santiago Soto* in articulating these exceptions to the general prohibition on sua sponte vacatur of an accepted guilty or no-contest plea.

¶31 The State argues the latter exception applies because Richer revealed during his allocution that he had withheld material information. Although the State sets forth a recitation of what occurred during the plea hearing and of what Richer said during his allocution at the first sentencing hearing, the State never articulates precisely what material information Richer supposedly withheld. Rather, the State adopts the postconviction court's approach of generally asserting that if Richer had made his allocution statements during the plea hearing, the circuit court would not have accepted the plea.

15

¶32 We do not agree with the State's assessment that Richer intentionally withheld from the circuit court material information prior to the court validly accepting his plea and adjudicating him guilty. As an initial matter, it seems what principally animated both the prosecutor's and the court's concerns about Richer's allocution was an overall doubt about Richer's actual desire to plead no contest. But such doubt, even if derived from a defendant's comments or dismay regarding how his or her case arrived at the plea-hearing stage, does not inherently establish a defendant's withholding of material information during a prior plea colloquy. And those concerns alone do not permit a circuit court to sua sponte vacate an accepted no-contest plea that was entered following an otherwise valid plea colloquy.

¶33 More specifically, and as the State acknowledges, Richer complained during his allocution about his prior counsel, about the alleged withholding of exculpatory evidence in the Dunn County case, that other individuals had brought drugs into his home, and that he was entering his plea to protect his wife. Case law following *Comstock* does not appear to precisely define what constitutes "material information," but logic dictates that to undo a plea, it must be information that would have affected the plea's validity in the first instance. None of the information Richer relayed during his first allocution meets this standard, either individually or collectively.

¶34 To begin, we agree with Richer's assessment that his statements about the drugs belonging to other individuals did not negate an element of the possession with intent to deliver offense. One can possess a drug without owning it, and possession merely depends on the item being "in an area over which the person has control" under circumstances showing an intent to exercise that control. WIS JI—CRIMINAL 6030 (2016). Richer simply stated the drugs were brought into

his home by other individuals, but he did not claim he lacked the ability to exercise dominion over them, nor did he assert the State could not prove his intent to exercise that dominion. Notably, Richer was charged with the possession offense as a party to a crime, meaning he need not have directly committed it. *See* WIS. STAT. § 939.05(1). Richer was questioned about accomplice liability during his initial plea hearing, and he acknowledged that he understood it. Nothing Richer said during the plea colloquy or his allocution suggested there was not a factual basis for the crime of possession with intent to deliver as a party to a crime, or that the State could not meet its burden of proving the elements of that offense beyond a reasonable doubt.

¶35 The State argues that, in any event, we must accept the circuit court's conclusion that Richer did not believe the words he was saying when he admitted the State could establish the elements of the offense.[9] The State argues the "circuit court acts as the finder of fact at a plea hearing," and therefore we "must give deference to its credibility determinations, especially when based on the witnesses' demeanor." Even if this is a correct statement of the law (the State cites only to cases involving factual findings following an evidentiary hearing), the State ignores the fact that the court affirmatively accepted Richer's initial plea following an exhaustive plea colloquy. The court, in fact, repeatedly assured itself

---

[9] The State regards the determination of whether Richer's plea was knowing, intelligent and voluntary as a question of fact subject to the "clearly erroneous" standard of review. Again, Richer clearly argues that his double jeopardy rights were violated by the procedure here, which presents a question of law. *See State v. Berry*, 2016 WI App 40, ¶9, 369 Wis. 2d 211, 879 N.W.2d 802. Even if we were to regard the question presented as whether Richer's plea was made knowingly, intelligently and voluntarily, the clearly erroneous standard of review applies only to the circuit court's findings of historical fact relevant to that determination. *See State v. Brown*, 2006 WI 100, ¶19, 293 Wis. 2d 594, 716 N.W.2d 906. The ultimate question of whether the facts demonstrate that the defendant's plea was made knowingly, intelligently and voluntarily is a question of law. *Id.*

17

that Richer understood the elements of the offense and that he was agreeing the State could establish them at trial. To the extent accepting Richer's plea called for a credibility determination, it is apparent that the court found Richer credible at the critical point in time.

¶36 Second, a defendant's post-plea explanation of the factual circumstances leading to the charges cannot undo a validly accepted plea, even if that explanation casts doubt on the defendant's guilt. In *State v. Rushing*, 2007 WI App 227, 305 Wis. 2d 739, 740 N.W.2d 894, the defendant, during his plea hearing and while discussing the factual basis for the plea, stated he was "guilty up to a point." *Id.*, ¶5. This statement prompted the circuit court to inquire further about the defendant's culpability, and the defendant, after consulting with his attorney, confirmed his guilt. *Id.*

¶37 At sentencing, the circuit court noted that Rushing had denied his guilt to the presentence investigator, and it sua sponte vacated the guilty plea it had previously accepted. *Id.*, ¶6. The court, on the State's motion, then granted the State's motion for reconsideration, concluding the procedure it had used violated *Comstock*. *Rushing*, 305 Wis. 2d 739, ¶¶7, 12. We agreed with this assessment, concluding that the court's sua sponte vacatur of Rushing's plea was in error and that neither of the exceptions to the *Comstock* rule was applicable

despite Rushing's claim of innocence. ***Rushing***, 305 Wis. 2d 739, ¶12. The same principle applies here.[10]

¶38 Third, the State ignores the fact that immediately prior to making the statements that caused the circuit court to vacate his plea, Richer had explicitly stated that he did not want the court to do so. Richer prefaced his allocution comments by stating that he "want[ed] to make … real clear" that he did not want to jeopardize his plea. Richer then stressed that he accepted the plea offer to spare his wife from prosecution. Richer also provided context for the allegations against him, not directly denying that the State could prove that he possessed the drugs in question but, rather, stating that other individuals were responsible for bringing the drugs into his home. The court, once again, went over each of the elements of the offense and confirmed both that Richer understood them and that he agreed the State could prove them beyond a reasonable doubt. Richer's statements at the inception of his allocution, coupled with the court's efforts at sentencing to confirm his plea—which efforts were not strictly necessary because the plea had already been accepted—dispel any notion that the court was justified in vacating the plea under the circumstances here.

¶39 Finally, the State argues Richer did not face double jeopardy as a result of the circuit court's actions because he was subject only to "continuing jeopardy" upon reinstatement of the charge. The State relies on ***Salters v. State***,

---

[10] The State responds to ***State v. Rushing***, 2007 WI App 227, 305 Wis. 2d 739, 740 N.W.2d 894, in part by arguing that because a circuit court need not accept a plea under ***State v. Waldman***, 57 Wis. 2d 234, 203 N.W.2d 691 (1973), the pertinent question is whether the court could have properly exercised its discretion to reject the defendant's plea based upon the new information. We do not agree that this formulation of the question presented is consistent with the double jeopardy claims Richer advances on appeal, which we review de novo.

52 Wis. 2d 708, 191 N.W.2d 19 (1971), despite the *Comstock* court distinguishing *Salters* on the basis that it "involved a court's accepting a guilty plea without fully hearing the evidence and making a determination of voluntariness and factual accuracy." *Comstock*, 168 Wis. 2d at 945-46. There are other reasons to be skeptical of *Salters'* continuing validity. Namely, despite *Comstock*'s clear holding that jeopardy attaches upon acceptance of a guilty or no-contest plea, *see Comstock*, 168 Wis. 2d at 937-38, *Salters* stated that a valid double jeopardy claim requires "a judgment of acquittal or conviction or a dismissal of the charges and then a second prosecution begun on the basis of the same offense," *Salters*, 52 Wis. 2d at 715.[11]

¶40    In any event, even if the State is correct that "the penalties to which Richer was exposed never changed as a result of the [circuit] court vacating his plea," it is apparent that Richer was materially harmed by the vacatur. The State asserts the "'original bargain' was functionally the same as the second plea agreement because the circuit court would not have been bound by the parties' joint sentencing recommendation at the first sentencing." The State further argues that it has fulfilled the plea agreement by "honor[ing] its promise to dismiss the

---

[11] As the State notes, the "continuing jeopardy" theory of *Salters v. State*, 52 Wis. 2d 708, 191 N.W.2d 19 (1971), has been adopted on at least one occasion by this court, though our discussion implicitly noted tension between *Salters* and *Comstock*. *See State v. Clark*, 2000 WI App 245, ¶5, 239 Wis. 2d 417, 620 N.W.2d 435. To the extent *Salters* and *Comstock* can be perceived to establish conflicting rules about when jeopardy attaches, we recommend that our supreme court resolve the discrepancy. *See Cook v. Cook*, 208 Wis. 2d 166, 189, 560 N.W.2d 246 (1997) (noting the court of appeals lacks authority to overrule, modify or withdraw language from a previous Wisconsin Supreme Court case). We apply *Comstock* here because it is the more recent proclamation from our supreme court on the issue, contains an explicit exercise of the court's superintending authority to establish a bright-line rule, explicitly distinguishes *Salters*, and is consistent with other Wisconsin case law holding that jeopardy attaches at the time a plea is accepted. *See, e.g., State v. Petty*, 201 Wis. 2d 337, 362, 548 N.W.2d 817 (1996); *Waldman*, 57 Wis. 2d at 237; *Hawkins v. State*, 30 Wis. 2d 264, 267, 140 N.W.2d 226 (1966).

remaining charges against Richer here and in Dunn County and the charges against his wife."

¶41    The Double Jeopardy Clause, however, protects an accused against a second prosecution for the same offense after conviction—regardless of whether the penalties are the same. *See* ***Berry***, 369 Wis. 2d 211, ¶8; *see also* ***Brown v. Ohio***, 432 U.S. 161, 165-66 (1977).  Moreover, the notion that Richer was not harmed by the vacatur is facially implausible.  The initial plea agreement, subsequently abandoned by the State, required a joint sentencing recommendation of six years' initial confinement and ten years' extended supervision.  The plea agreement following vacatur left the parties free to argue at sentencing, and the State ultimately recommended a thirty-year sentence, consisting of fifteen years' initial confinement and fifteen years' extended supervision.  Moreover, the second plea agreement contained less protection for Richer's wife because the charges against her were dismissed without prejudice.  Richer's express goal in entering into the plea agreement—the "clinching part," according to his defense counsel— was to ensure that his wife would not be prosecuted.  That assurance was eliminated.  Under these circumstances, we do not perceive the State to have "honored its promise[s]" under the "original bargain."

¶42    We therefore reverse the judgment of conviction and the order denying Richer's postconviction motion.  We remand with directions that the circuit court reinstate Richer's original plea and enforce the initial plea agreement, pursuant to which that plea was entered.  As part of those proceedings, Richer is entitled to resentencing with the benefit of the sentencing recommendation the State agreed to make under the initial plea agreement.  The court may conduct such other proceedings as are necessary on remand, consistent with this opinion.

21

*By the Court.*—Judgment and order reversed and cause remanded with directions.

Not recommended for publication in the official reports.